# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡

## WILLIAM J. ROBERTS v. GENEVA S. PACE AND OTHERS.

December 3, 1951.

Record No. 3795.

Present, Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*Martin, Martin & Hopkins* and *Meade & Talbott,* for the appellant.

*Walter H. Scott,* for the appellees.

SMITH, J., delivered the opinion of the court.

William J. Roberts was married to Virginia Pace on August 17, 1938. No children were born of this marriage. The couple

lived together, except for a short period of time, until the spring of 1946, when they separated. On August 27, 1946, they executed a valid property settlement whereby Roberts paid his wife $10,250 in cash and she in turn conveyed to him all of her interests in all real estate held jointly by them, which he later, on July 30, 1947, sold for $13,000. All claims to curtesy, dower, alimony, support, or maintenance arising out of the marital relation were also expressly relinquished by both parties in this document.

On September 14, 1946, Virginia Pace Roberts filed suit for divorce on the ground of desertion. She was granted an *a mensa et thoro* decree on November 13, 1946, which ratified and confirmed the above property settlement and a copy of the contract was attached to and made a part ·thereof. Thereafter, Mrs. Roberts moved into the home of her parents and Roberts lived alone in a rented room.

On November 11, 1947, approximately one year later, Virginia Pace Roberts was the victim of a fatal automobile accident. She had executed a will on April 15, 1946, which was probated on November 24, 1947, her mother, Geneva S. Pace, duly qualifying as executrix, wherein she bequeathed and devised all of her estate to her mother, sisters, and brother, to the exclusion of her husband. Accordingly, on January 1, 1948, Roberts filed a renunciation of his wife's will, followed on January 6, 1949, by a suit in chancery to enforce his alleged rights in the real and personal estate of his deceased wife, wherein he alleged, among other things, a reconciliation with his wife on August 17, 1947, in which "they then and there agreed to annul and cancel said agreement". The defendants to the bill were Geneva S. Pace, in her own right, and as executrix of Virginia Pace Roberts, deceased, Eva Pace Meadows, Dorothy Pace Sink, and Joseph D. Pace (mother, sisters, and brother of Virginia Pace Roberts). After hearing the evidence, the trial court dismissed Roberts' bill.

The issues in this appeal may thus be reduced to two simple questions. First: Was there a reconciliation between the estranged couple, William J. Roberts and his wife, Virginia Pace Roberts, prior to her death on November 11, 1947? Second: If there was such a reconciliation, did it abrogate in whole or in part the post-nuptial property settlement entered into by the parties on August 27, 1946?

Since our answer to the first question is in the negative, there is no need for any consideration of the second question.

The portrayal of the facts and history of the controversy just outlined is not contradicted by any of the parties. We, therefore, next turn our attention to those matters on which there is considerable dispute and from which we must determine whether or not there was a reconciliation as contended by the appellant.

The evidence abundantly shows that Virginia Pace Roberts desired to effect a reconciliation with her husband. In her letters and conversations with friends and members of her family she frankly admitted her mistake in obtaining a judicial separation and objectively manifested her desire to return to her husband. But we are not able to find any substantial evidence of Roberts' intention to accept, or actual acceptance of, his wife's overtures of reconciliation prior to her death.

Appellant, for example, places great stress on the fact that he gave his wife an expensive wrist watch on August 17, 1947, their wedding anniversary, and contends that this date marked the effective time of their reconciliation. Roberts also emphasizes several trips that he and his wife are alleged to have taken at which times they stayed together as husband and wife in Washington, D. C., Virginia, and North Carolina. He says these incidents show that a reconciliation had been effected.

On August 17, 1947, however, the very date on which Roberts contends that the reconciliation with his wife took place, she wrote a letter to her aunt, Mrs. Watson Massey of Spring Hope, N. C., in which she expressed her affection for her husband in endearing terms and said, in part, as follows: "I want Bill [the appellant] to forgive me. I didn't mean it or anything I have said. I am going to ask him to take me back. I will be proud to be his wife and I want him to be proud of me". If, as Roberts contends, a reconciliation was effected on August 17, 1947, his wife had no knowledge of it. In her letter written that same day she reiterates her desire to go back to him, but it is evident that her husband had not communicated any intention on his part to accede to her offer of reconciliation. Even if, as appellant claims, this letter was written in the early evening before he saw his wife, then why would she have mailed it thereafter?

It is significant too that August 17, 1947, was the deceased woman's birthday and in a letter dated August 22, 1947, written to Mrs. Marion Dilkman of Riverdale, Maryland, she commented on the watch as follows: "Not much more except you should see the new watch Mr. Roberts gave me *for my birthday*". (Italics supplied). Mrs. Roberts' mother also testified that Virginia had told her the watch was a birthday present.

There is conflict in the testimony regarding the occasions on which Mrs. Roberts is alleged to have cohabited with her husband while away from home on business and pleasure trips with him. We do not believe it is necessary to discuss all the evidence in this connection. Mere casual cohabitation between the parties, after the separation, unaccompanied by resumption of normal married life together, or reasonable explanation for their failure so to do, is not sufficient to show a reconciliation or an agreement to live and cohabit together again on a permanent basis as husband and wife. See annotation, 40 A. L. R. 1238, citing cases from many jurisdictions.

There was certainly no financial problem, for the parties had ample funds on deposit, and had there been a reconciliation no reasonable explanation is offered why normal married life had not been resumed between August 17, 1947, and November 11, 1947.

Mrs. Roberts' father testified that he had on several occasions acted as an intermediary between his daughter and Roberts in a vain attempt to effect a reconciliation. He testified that Roberts had been cool to his overtures on behalf of Virginia and that each time appellant insisted that his estranged wife must restore to him his rights in the property involved in the original property settlement of August 27, 1946, as a condition precedent to any reconciliation.

Mrs. Dorothy L. Admanson, a witness called on behalf of the appellant, testified that at the request of Virginia Pace Roberts she had telephoned Roberts and conveyed the message that Virginia wanted him to take her back. Part of Mrs. Admanson's testimony is as follows:

"Q. What was the purport of the conversation with Mr. Roberts at the time?

"A. She asked me to call Bill as she called him and ask him about taking her back. When I told him he sorta laughed and said, 'is she sure' and he said, 'What about the property' and I

said, 'Wait a minute', and Virginia said, 'You tell Bill there is nothing I want but him', and I told him that. That was just before their anniversary.

"Q. Do you remember what Mr. Roberts asked you to ask his wife?

"A. He asked me to ask Virginia about the property—if she was willing to go ahead and deed it back and she said it was all right. The only thing I want is him."

However, the record is clear that Virginia Pace Roberts never made any conveyance of any of her property to her husband between the time she was divorced and her death, as was required by her husband as a condition precedent to any reconciliation between the parties.

The trial court properly considered all the relevant evidence, weighed it carefully, and dismissed the bill. There is, therefore, no need for us to review in detail every aspect of the evidence, although we have considered the entire record. To summarize the controlling factors in this case, we are satisfied to quote with approval the observations in the opinion of the learned trial judge:

"In this connection it is significant (1) that although the wife, after the divorce decree, had made a will of which husband had knowledge, and which, according to his evidence, upon reconciliation she was to destroy or change, and even though he claims the reconciliation took place in August, the will had not been destroyed or changed at the time of her death in November; (2) that when the husband bought property [on or about October 21, 1947] in which the parties intended to live as he contends, he had to secure a loan or execute a deferred purchase money deed of trust on the property for $10,000, when the wife at that time had $10,000 in the bank which he had paid her under the property settlement; (3) that though the former home of the parties was in their joint names, the title to the property purchased as a home, as he contends, was taken solely in his name; (4) that although the complainant contends that a reconciliation had been made in August, 1947, and the wife was killed in November, 1947, none of the wife's property had been turned over to nor conveyed to him as he had demanded as a condition of a reconciliation with her, nor had he restored to the wife the property he acquired from her; (5) that normal cohabitation as man and wife had not been resumed at the time of the death

of the wife, nor had any effort been made to have the *a mensa* divorce decree set aside.''

In conclusion, the most that took place was cohabitation on a spasmodic basis on out-of-town trips and such evanescent acts of marital relationship cannot be dignified into the status of a reconciliation in the sense demanded by society of a husband and wife living with each other on a permanent basis. Although each of the parties unilaterally may have intended to and may have attempted to effect a reconciliation, their individual efforts were abortive and the contract was in full force and effect at the time of the death of the wife. Therefore, Roberts had no rights in the estate of his wife. See generally 17 Am. Jur., Divorce and Separation, § 735. For these reasons the decree of the trial court is affirmed.

*Affirmed.*