## CORPORATION COURT OF THE CITY OF WINCHESTER

Mabel V. Hamilton

v.

Luther F. Hamilton

### April 10, 1953

BY JUDGE ELLIOTT MARSHALL

Luther F. Hamilton and Mabel V. Hamilton were married on July 14, 1934. There were no children resulting from the marriage.

The wife, in 1947, instituted suit for divorce *a mensa et thoro* against her husband, alleging that he deserted her on April 18, 1947. She further alleges that on April 26, 1947, he attacked her and was convicted of assault and battery because of such assault. The bill contains averments concerning various claims of the wife to properties jointly owned by the parties and claims of indebtedness to her by the husband and prays that the court make some property settlement between the parties.

The husband filed an answer denying the desertion on his part, alleging that his wife deserted him on June 16, 1946, in Maryland. He stated further that after that desertion he resided with his wife in Frederick County, Virginia, but did not cohabit with her as man and wife. He admitted that he left home on April 18, 1947, but alleged that he do so because of his wife's constant nagging. His answer makes further averments insinuating that his wife might be guilty of impropriety with some unknown man.

Depositions were taken on October 24, 1947, and again on November 12, 1947, in support of the wife's bill. The defendant offered no evidence in support of his answer.

On November 17, 1947, the wife was granted a divorce *a mensa et thoro* on the ground of desertion and the defendant was ordered to pay ten dollars per week as alimony "until the further order of this court, or until they, the said complainant and defendant, be reconciled to, or shall cohabit together again as man and wife but not in any event for a greater period of time than their joint lives . . ."

In February 1950, the husband filed a petition praying that the court "set aside" the provisions of the decree requiring him to pay alimony on the ground of changed conditions and on the further ground that his wife was guilty of adultery on January 20, 1950. The wife filed an answer and the court heard the case on petition, answer and evidence *ore tenus* on April 11, 1950, on which day a decree was entered denying the relief prayed although the court found that the evidence was sufficient to show that since the decree of divorce *a mensa et thoro* the complainant "has been guilty of adultery."

On October 4, 1950, the husband was adjudged guilty of contempt for failure to pay alimony.

In September, 1951, a petition was filed by the husband praying that the *a mensa* decree be merged into a decree *a vinculo*. The wife filed an answer denying the averment of the petition that there had been no reconciliation since the *a mensa* decree.

The wholly uncorroborated testimony of the parties in support of the petition for merger and answer is to the effect that within a month after the *a mensa* decree there was some attempt at reconciliation. They were together for about two weeks staying one or more nights in the home where they had lived prior to the separation. They occupied the same room and sometimes the same bed at the home of a friend and again one of the husband's relatives. The wife says that they had numerous acts of intercourse; the husband that they had only one. In or prior to January, 1948, the parties separated and there has been no reconciliation or resumption of cohabitation since.

The purpose of the *a mensa* statutes (Code Secs. 20-95, 20-116) is to afford a temporary legal separation while the parties may explore all possibilities of reconciliation. The decree *a mensa* may be revoked at any time upon the joint application of the parties and evidence of the re-

conciliation. (Code Sec. 20-120). The guilty party may have the *a mensa* decree merged into an *a vinculo* decree "upon the production of satisfactory evidence . . ." "if the court shall be of opinion *from the evidence* so taken that *no reconciliation* has taken place, or is probable, and that *a separation has continued without* interruption . . ." since the granting of the *a mensa* decree. (Italics supplied) (Code Sec. 20-121).

Upon application for merger there appears to be a burden placed upon the applicant to prove absence of reconciliation, unlikelihood of possibility of reconciliation, *and* continuance of separation without interruption. In my opinion this burden should not be a very onerous one. I do not believe that the requirements of Code Section 20-99 as to corroboration do or should apply. If every act toward reconciliation should jeopardize the existence of the *a mensa* decree or the right of either party to a merger, it would tend to discourage attempts at reconciliation and tend to defeat the very purpose of the statute. I think that the merger statute was intended to place in the judge the duty to consider all the facts of the case, including the evidence taken in support of the *a mensa* decree, the various pleadings and the evidence taken in support of the application for merger, and from all these things determine whether "in his opinion" there has been any actual reconciliation of a permanent nature, and actual interruption of the separation, and, *above all*, whether there is any likelihood of future reconciliation.

It is very easy to decide in this case that there is small chance that the parties will ever in the future live together again as man and wife. They have been personally before the court several times during the course of this protracted litigation. Their attitudes toward each other and their various recriminations dispel any forlorn hopes in this respect. Except for a period of about two weeks they have been separated for about six years. Even prior to the adjudicated date of desertion there had been periods of estranged separation and matrimonial strife. This court found that the wife was guilty of adultery about two years after the alleged reconciliation. Under Code Section 20-117 the husband could have procured a *divorce a vinculo* on the ground of adultery

in 1950. His wife could not have defended by way of recrimination because of his desertion and the *a mensa* decree. *Haskins* v. *Haskins*, 188 Va. 525 (1948). For some reason he chose not to take such a course, and the court decided that under the facts of the case he should not then be relieved of payment of alimony under the *a mensa* decree. However, such fact is entitled to consideration in deciding the questions at hand.

The difficult problem in this case is to determine whether there has been such a reconciliation and interruption of the separation which would bar the merger. We must, of course, examine the language of the statute to determine the legislative intent. It is significant that these requirements are stated in the conjunctive. The court must find that there has been no reconciliation *and* that the separation has continued without interruption. The statements of legal propositions in the negative are sometimes confusing, especially where, as seldom occurs, the burden of proof is in the negative. However, if we state the converse, that is affirmative, the meaning is more clear. If the court finds that there has been a reconciliation and that the parties have discontinued the separation there shall be no merger. If the words "reconciliation" and "separation" were used in their ordinary lay connotations the meaning would be obvious. Reconciled means that the parties have agreed as to an adjustment of differences; separated means disunited; ergo, the parties have adjusted their difficulties and become united. One without the other would not be enough. Of course, we cannot use the lay definitions, but the legal meanings of such words with reference to divorce are not much different than the lay definitions. In law the two requirements are nearly the same. Reconciliation involves resumption of marital cohabitation; discontinuance of marital separation means resumption of cohabitation *and* reconciliation. Neither could exist without the other. What the Legislature plainly intended was complete resumption of marital cohabitation. Agreements or attempts to become reconciled would not be enough. Mere temporary or conditional discontinuance of separation would not be enough. There must be reconciliation and complete resumption of marital cohabitation on a permanent basis.

As was so well said in *Roberts* v. *Pace*, 193 Va. 156, 159 (1951):

> Mere casual cohabitation between the parties, after the separation, unaccompanied by resumption of normal life together, or reasonable explanation of their failure so to do, is not sufficient to show a reconciliation or an agreement to live and cohabit together again on a permanent basis as *man and wife*. (Italics supplied); *cf.* 40 A.L.R. 1238.

In that case it was noted as significant that there had been no effort made to have the *a mensa* decree revoked under Code Sec. 20-120. The same is true in the instant case. There were apparently several acts of sexual intercourse between the parties in the Roberts case when they took trips together. The opinion assumes that they may have "cohabited" while away from home on business and pleasure trips. This is true in the instant case with the additional fact that they stayed in the jointly owned home together for one or two nights. As in the *Roberts* case, although they may have "unilaterally" made an abortive attempt to become reconciled and to resume marital cohabitation on a permanent basis, it is possible under the evidence, that such was not their intention at all. While, as in the *Roberts* case, there may have been momentary mutual intentions to become reconciled or to resume their marital cohabitation, or even temporary resolutions that the same had been effected, the nature of their acts at the time, viewed in the light of what had occurred previously, and their subsequent behavior justifies our conclusion that there has never been any resumption of marital cohabitation on a permanent basis in this case. To me it seems that any other holding would tend to discourage advances by the parties to each other for the purpose of reconciliation. To say that their conduct should be measured by the same terms as if they had never been married would require them to guard against relationships which might be most conducive to reconciliation. One or more casual acts of intercourse under the circumstances of this case should no more bind them to a marital status than such acts would bind unmarried persons.

I think it only fair to say that in arriving at my conclusion I have not ignored the practical problem which exists in this case. These two people for some reason actually unknown to the court cannot live together in harmony. Both may be equally at fault. Certainly both to some extent are at fault. Under the alternative holding both would be bound together for no good reason. If there is any possibility that they might become reconciled after the passage of six years they can remarry after an *a vinculo* decree. In cases such as this the court should scan the evidence with caution, especially the testimony of the wife, in determining the question of reconciliation. The usual presumptions from acts of intercourse should not apply. The court should view all of the facts and circumstances of each particular case and determine the question.

Counsel have relied heavily on the doctrine of condonation. In my opinion the doctrine has little, if any, application to the instant case. In divorce cases condonation often plays a vital part. But this is not a divorce case. For most intents and purposes other than the cooling-off period of waiting an *a mensa* decree is the same as an *a vinculo* decree. The merits of the dispute have been settled. All that remains is the passage of time necessary for the merger. The situation of the parties is far different than during the marriage.

In the instant case if there had never been a decree *a mensa* it would have been held that there was a condonation and that the separation prior to January, 1948, was interrupted by temporary resumption of cohabitation. The desertion would not take place until afterward. The rule of *Tarr* v. *Tarr*, 184 Va. 443 (1945), would apply. During the existence of the marriage one act of intercourse will, of itself, condone the wrong upon which the prayer for divorce is predicated, but mere condonation, alone, will not bar merger. It is true that in the *Tarr* case the word "cohabit" in the statute was construed to mean "copulate," but the word "cohabit" is not contained in the merger statute, nor in our opinion did the Legislature intend the same test to apply to the application for merger.

Accordingly, I will enter the decree of merger.