## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Robert J. Callahan

v.

Elaine Callahan

April 6, 2005

Case No. CH03-669

BY JUDGE WILLIAM H. LEDBETTER

The issue presented in this divorce case is whether the parties reconciled in the summer of 2003 thereby nullifying a separation agreement that they had signed a year earlier.

*Background*

Mr. and Mrs. Callahan were married in 1980. Three children were born of the marriage, two of whom are still minors. The parties separated in July of 2002.

The parties entered into a five-page "marital settlement agreement" dated July 19, 2002.

After the separation, Mrs. Callahan lived in a motel for a while, then moved to a townhouse owned by Mr. Callahan. The oldest child lived with her most of that time. Mr. Callahan continued to reside with the two younger children at the marital residence in Locust Grove.

In the summer of 2002, Mrs. Callahan stayed in the marital residence with Mr. Callahan for a few weeks. In July of 2002 they traveled together, with the children, to Tampa, Florida, to visit relatives. Several days after

they returned from the Florida trip, Mrs. Callahan went back to the townhouse and has lived there ever since.

Mr. Callahan initiated this litigation on August 12, 2003, seeking a no-fault divorce and ratification of the separation agreement. Mrs. Callahan filed a pleading labeled "Revocation of Waiver," claiming that the separation agreement was void because of the reconciliation.

On March 22, 2004, the court allowed Mr. Callahan to file an amended bill of complaint and allowed Mrs. Callahan to file late pleadings. The amended bill was filed. Mrs. Callahan responded to it and filed a cross-bill alleging cruelty. In her response, she alleged that the separation agreement was obtained by coercion and trickery, that it is unconscionable, and that it is a nullity because of the reconciliation.

On May 3, 2004, the court appointed Ellen B. Hagan, Esquire, as guardian ad litem for the two minor children. On that day, the court heard evidence and awarded the parties joint custody of their minor children and directed that they live with Mr. Callahan. No child support or spousal support was awarded. The issue of the validity of the separation agreement was continued.

Depositions were taken on October 13, 2004.

Mrs. Callahan's attorney withdrew on December 6, 2004.

On March 8, 2005, Mr. Callahan submitted written argument on the issue of reconciliation. Mrs. Callahan responded with a written argument.

*Ancillary Matters*

Mrs. Callahan has asked the court to allow her to proceed *in forma pauperis*. There is no need for such request since she will not bear any costs or fees associated with the case.

In her written argument, Mrs. Callahan addresses her unconscionability claim. She accurately defines the term. However, upon a careful reading of the separation agreement and the evidence taken by deposition on October 13, 2004, the court finds no evidence to support Mrs. Callahan's rather nebulous argument that the agreement is "blatantly one-sided" or that it is based on "lack of disclosure." The party who asserts that an agreement is not valid because it is unconscionable has the burden of presenting evidence in support of that assertion. Mrs. Callahan did not do that.

Although the depositions of October 13, 2004, are adequate for an adjudication of the issue of reconciliation, they are inadequate for the purpose of establishing a ground for divorce. No one properly corroborated Mr. Callahan's testimony that the parties have lived separate and apart for

one year. Supplemental depositions will have to be taken, pursuant to notice, to prove that issue.

## Reconciliation

Evidence regarding the parties' so-called reconciliation in the summer of 2003 is set forth fully in the deposition of October 13, 2004, and the accompanying exhibits.

The law regarding reconciliation is well-settled. A reconciliation is the restoration of harmony between persons who had been in conflict. In family law, reconciliation is the voluntary resumption of full marital relations between spouses. *Black's Law Dictionary* (7th ed.), p. 1278.

Virginia Code § 20-155 provides that a reconciliation abrogates a separation agreement unless otherwise expressly set forth in the agreement. The Callahans' agreement contains no such proviso. Therefore, a reconciliation would abrogate their agreement.

This case is controlled by the analysis in *Jacobsen v. Jacobsen*, 41 Va. App. 582, 586 S.E.2d 896 (2003). The facts in that case are similar to those in this case. Mr. and Mrs. Jacobsen separated. They entered into a separation agreement. Several months later, Mr. Jacobsen returned to the marital home where he stayed for several days. Then, the parties took a trip to Ohio. They engaged in sexual relations. After the trip, the parties lived together "intermittently" from July until the end of September of that year. As a result, Mr. Jacobsen sought to have the parties' separation agreement vitiated.

In *Jacobsen*, the court said that the public policy of Virginia is to encourage reconciliation of separated spouses. However, "cohabitation on a spasmodic basis . . . cannot be dignified into the status of a reconciliation in the sense demanded by society of a husband and wife living with each other on a permanent basis." Also *see Roberts v. Pace*, 193 Va. 156, 67 S.E.2d 844 (1951).

Reconciliation means more than simply cohabitation. It comprehends a fresh start and genuine effort by both parties. It must be shown that the parties intended to live together as husband and wife and take up their respective roles in the relationship. They must establish a home and live together in a normal relationship as husband and wife.

Resumption of sexual relations is only one factor in establishing a reconciliation. The parties must resume the performance of marital duties while living together on a continuous basis. The parties must exhibit good faith and a genuine intent.

The evidence in this case indicates intermittent cohabitation and little more than casual sexual relations during the summer of 2003. During the entire time period, the parties did little to hold themselves out as husband and wife and did not perform normal marital duties on a continuous basis. Mrs. Callahan maintained a residence at the townhouse. Mr. Callahan lived with the two youngest children in Locust Grove. At no time during the "reconciliation" did the parties resume the relationship they once had; i.e., no joint accounts, no credit cards, no resumption of regular familial responsibilities. On the trip to Florida, they traveled separately. While in Florida, they stayed together, with children, in a motel, but they visited relatives separately. Mr. Callahan testified that Mrs. Callahan maintained contact, however minimally, with her paramour.

In *Jacobsen*, the trial court called the reconciliation a "sham," suggesting that it was arranged by Mr. Jacobsen solely for the purpose of defeating the separation agreement. This court will not attribute such an ulterior motive to Mrs. Callahan. Nevertheless, the parties' casual and intermittent cohabitation during the summer of 2003 will not be elevated to the status of a reconciliation so that the parties' dalliances during the period would abrogate and nullify an otherwise valid contract between competent adults.

Therefore, at the appropriate time, the court will confirm and ratify the separation agreement of July 19, 2002, and enforce its provisions pursuant to Virginia Code § 20-109.1.