# CIRCUIT COURT OF THE CITY OF SALEM

Michelle Redfern Baba

v.

Roberto Bradley Baba

December 22, 2009

Case No. CL08-307

BY JUDGE ROBERT P. DOHERTY, JR.

The parties separated in May of 2007 and a month later entered into a post-nuptial agreement resolving all matters of custody, support, and property between them. Wife filed a complaint for divorce in July 2008 alleging that they had reconciled on or about November 1, 2007, but thereafter Husband abandoned the marriage and was guilty of adultery, cruelty, and desertion. Wife's position is that the reconciliation in November 2007 abrogated the post-nuptial agreement pursuant to the provisions of § 20-155, Code of Virginia (1950), as amended, and also in accordance with the specific terms of the agreement. Husband contends that the separation occurred in May 2007, that a reconciliation never occurred, and that the post-nuptial agreement continues to be a viable and enforceable contract.

A reconciliation contemplates a meeting of the minds and the specific intent on the part of each party to actually restart their marriage. It requires they give up their separate life and resume once again living together as husband and wife, openly, on a permanent basis. The parties become a family. A reconciliation requires more than just engaging in occasional sexual relations and sporadically sharing a bed. It requires that the couple actually share their lives together and make a fresh start. They must in good faith, with genuine intent, resume marital cohabitation and live together in harmony. A

true reconciliation is obvious and easy to prove. Speculation, conjecture. and guesswork are not necessary when a married couple actually reconciles after a separation. Its existence is apparent. See *Roberts v. Pace*, 193 Va. 156, 159 (1951); *Petachenko v. Petachenko*, 232 Va. 296, 299 (1986); and *Jacobsen v. Jacobsen*, 41 Va. App., 582, 589-92 (2003).

In this case, Husband testified that he did not intend to reconcile with Wife, that he and wife had "accidental sex" three or four times, that he spent some but not all of the weekends in November and December 2007 at Wife's home, some of which he slept on the couch, and some of which he spent at least one night back at his own residence, and that he continued to date other women. There was no evidence that Husband moved his clothing and personal effects back to the Wife's home, or she to his. There was not sufficient evidence to convince the Court that the parties were trying to restart their marriage. Husband continued to maintain his separate residence, receive his mail at locations other than where Wife lived, and generally lived as a bachelor. Although he gave jewelry to Wife, he also gave similar gifts to other women. The parties did not share their finances, open joint banking or credit accounts, or share routine duties around the house. Wife's testimony that the parties intended to get back together and had actually done so was denied by Husband. Where there was a conflict in the testimony, the Court believed Husband. It is true that both parties were concerned and working together to try to solve the problems Wife's son was having. It is also true that the children hoped, and maybe even believed, that Husband and Wife were getting back together. But the evidence did not bear that out. "The party seeking to avoid an agreement based on a defense of reconciliation has the burden of proving that the reconciliation was genuine." *Jacobson v. Jacobson*, at 591. Wife failed in that burden.