364 S.E.2d 799

**Chester A. KAMINSKY,**

v.

**Meryle J. KAMINSKY.**

**No. 17564.**

Supreme Court of Appeals of West Virginia.

Dec. 8, 1987.

James O. Watkins, Jr., Fairmont, for Chester Kaminsky.

Robert M. Amos, Fairmont, for Meryle Kaminsky.

BROTHERTON, Justice:

In this case, Meryle Kaminsky appeals the final order of the Circuit Court of Marion County, Judge Rodney Merrifield presiding, which enforced a separation agreement executed between the appellant and her husband, the appellee, ten years prior to their divorce. For the reasons set forth below, we reverse and remand the case for further proceedings.

Meryle J. Kaminsky and Chester A. Kaminsky were married on July 3, 1942, and lived together until they separated on or about April 1, 1975. On April 25, 1975, the parties executed a separation agreement which purported to represent a complete and final settlement of their property rights. Thereafter, pursuant to the agreement, Mr. Kaminsky conveyed his one-half interest in the marital home to Mrs. Kaminsky, and Mrs. Kaminsky conveyed to her husband her one-half interest in another piece of jointly owned real estate. In July, 1975, Mr. Kaminsky sold his interest in the real estate conveyed to him under the separation agreement for $30,000.[1]

It is unclear from the record how long Mr. and Mrs. Kaminsky remained separated, but within six months they had reconciled and Mr. Kaminsky had moved back into the marital home. Mr. and Mrs. Kaminsky lived together as husband and wife until November or December of 1985, when Mr. Kaminsky filed for divorce on the grounds of irreconcilable differences. The parties were divorced by order entered on February 25, 1986.

After the divorce the Circuit Court of Marion County held hearings on the issue of equitable distribution, pursuant to which Judge Merrifield reviewed the Kaminskys' financial affidavits. Mrs. Kaminsky's financial statement showed total assets of $48,000. Mr. Kaminsky's original financial statement showed assets of $44,000. Subsequently, Mr. Kaminsky filed a supplemental affidavit which showed an additional $38,000 in certificates of deposit. In this affidavit Mr. Kaminsky stated that the source of the funds for the certificates of deposit was the $30,000 proceeds from the sale of "certain real estate to Joe R. Law and Helen P. Law, his wife, in July, 1975, and the accrued and reinvested interest earned thereon."[2] The property transferred was the property Mr. Kaminsky received under the 1975 separation agreement.

By letter dated November 6, 1986, the lower court advised the parties that after review of the testimony, the financial affi-

---

1. We cannot determine from the record before us whether other property was conveyed pursuant to the agreement. References in this opinion to separate property should be read to refer to the real estate described above and to any other property conveyed at the time of the initial separation.

2. In her response to Mr. Kaminsky's second affidavit, Mrs. Kaminsky asserted that in the ten years from 1975 until the divorce in 1986, while the parties had continued to live together, Mr. Kaminsky had acquired in excess of $109,000 in joint assets, consisting of certificates of deposit, savings accounts, a lump sum payment of black lung benefits, and interest.

davits and arguments of counsel, he was ordering Mr. Kaminsky to pay Mrs. Kaminsky $6,000 alimony, plus attorneys' fees to be determined by the court. The letter also directed Mrs. Kaminsky's counsel to prepare the appropriate order. By letter dated December 1, 1986, counsel for Mrs. Kaminsky advised the lower court that such an order could not be prepared to reflect the court's decision as the lower court had made no findings of fact or conclusions of law as required by W.Va.Code § 48–2–32(f) (1986). By letter dated December 4, 1986, the lower court directed the parties to appear on December 8, 1986, and advised that he was addressing counsel's letter of December 1, 1986, as a motion to reconsider.

By order entered December 12, 1986, the lower court made the following findings of fact:

> 1. The Separation Agreement dated April 25, 1975, between the parties constitutes a fair and equitable division and distribution of marital assets and properties.
>
> 2. No marital assets were acquired by the parties subsequent to the date of said Separation Agreement.
>
> 3. The award of alimony to the defendant constitutes adequate compensation for her homemaking services.

The lower court then modified its order of November 6, 1986, and ordered that:

> 1. The defendant [Mrs. Kaminsky] recover nothing from the plaintiff by way [of] equitable distribution of marital assets other than what was provided for in said Separation Agreement dated April 25, 1975.
>
> 2. Defendant's [Mrs. Kaminsky's] request for attorney's fees be denied.

On appeal, Mrs. Kaminsky argues that she is entitled to an equitable distribution of assets acquired during the ten-year period of reconciliation prior to divorce. In response, Mr. Kaminsky argues that the assets from which his wife is claiming an equitable share are his separate property, because they were acquired through investment of the proceeds from the sale of the property conveyed to him under the separation agreement. We must, therefore, determine, first, whether the separation agreement entered into in 1975 is binding as to property division when the parties have reconciled and cohabited as husband and wife for ten years after execution of the agreement [3] and, second, whether the property actually conveyed pursuant to the separation agreement and the appreciation and earnings thereon constitute marital property or separate property for purposes of making an equitable distribution under W.Va.Code § 48–2–32 (1986).

### I.

The Kaminskys' separation agreement entered into in April, 1975, stated that "this agreement represents a complete and final settlement of all of their property" and that "each party expressly releases all rights or claims by way of inheritance, descent, distribution, or in any other way arising out of the property acquired by the parties during the marriage union." While the Kaminskys did separate pursuant to their agreement, within six months they had reconciled and resumed living together as husband and wife and were not, in fact, permanently separated or divorced until ten years later. Yet, during their temporary separation, the Kaminskys executed the separation agreement to the extent of transferring title to certain marital property.[4]

 Other courts which have considered the issue generally agree that "reconciliation," or resumption of the marital

---

3. West Virginia Code § 48–2–1(h) (1986) defines a "separation agreement" as:

 [A] written agreement entered into by a husband and wife whereby they agree to live separate and apart from each other and, in connection therewith, agree to settle their property rights ... or to otherwise settle and compromise issues arising out of their marital rights and obligations.

4. In making our determination as to the status of the property we presume, absent evidence to the contrary, that the property was marital property at the time the Kaminskys executed the separation agreement.

relation,[5] will invalidate all executory provisions of a separation agreement. *See, e.g., In re Estate of Adamee*, 291 N.C. 386, 230 S.E.2d 541, 545 (1976). The same rule is often stated as the converse: Reconciliation does not affect those provisions of a separation agreement that have already been executed. *See, e.g., In re Miller v. Miller*, 189 Mont. 356, 616 P.2d 313, 317 (1980).[6] Where all provisions of the agreement have been executed, reconciliation will have no effect. *In re Marriage of Reeser*, 635 P.2d 930, 932 (Colo.Ct.App. 1981). Where, however, certain provisions have been executed, as in this case, but the remainder of the agreement contemplates performance in the future, reconciliation may operate to invalidate the agreement to the extent it is not yet performed. *See Carlton v. Carlton*, 74 N.C.App. 690, 329 S.E.2d 682 (1985) (overturning summary judgment that enforced twenty-year-old agreement where evidence was conflicting regarding reconciliation in interim).[7]

We believe the rule discussed above is a sound one, and therefore hold that reconciliation presumptively invalidates all executory provisions of a separation agreement, but does not affect any provision of such an agreement that has been executed. This rule reflects the fact that most couples who enter into a separation agreement contemplate a lasting separation, and ordinarily divorce, as part of the bargain.[8] It presumes that couples who call off the separation intend to call off the division of property as well.[9] It also protects legal title and unknowing purchasers of transferred property, while leaving the parties free to voluntarily reverse executed transfers.

Turning to the facts in this case, we find that the reconciliation of the parties did not affect their transfers of property pursuant to the 1975 separation agreement. Mrs. Kaminsky holds legal title to the marital home, and Mr. Kaminsky is the legal owner of the proceeds from the sale

5. Whether there has been a true reconciliation is a factual issue, but in this case, where the couple resumed cohabitation soon after separation, and lived as husband and wife for ten years, reconciliation cannot be disputed.

6. *Cf. Garrett v. Kirtley*, 97 W.Va. 484, 125 S.E. 347 (1924). In *Kirtley*, this Court refused to cancel a contract executed by a husband and wife while living separate and apart pursuant to which the husband, for a valuable consideration, relinquished any and all claims to her real and personal property. Subsequent to the execution of the contract, the parties contemplated a reconciliation, but the wife died before resumption of cohabitation. The husband argued that the intended reconciliation abrogated the agreement. Viewing the contract not as a separation agreement, but as "a mutual adjustment and settlement of their respective property rights," the Court reasoned that:

[i]f, in a separation agreement, there is a separation settlement of property rights based on independent consideration, and which may have been made had there been no separation, it appears not to be terminated as a matter of law simply because the parties become reconciled and live together again. While reconciliation and resumption of marital relations and duties will abrogate the separation agreement so far as the consideration therefor consists in the agreement to live apart, the resumption of the marriage relation does not rescind a part of the agreement based on an independent consideration.

*Id.* 97 W.Va. at 489, 125 S.E. at 349. This pronouncement is in accord with the rule stated in text to the effect that executed portions of a separation agreement (in *Kirtley*, those that had been performed for a valuable consideration independent of the separation itself) are binding notwithstanding a reconciliation. Based on that reasoning, the Court decided that even if the husband and wife had resumed cohabitation, there was "nothing in the record to evidence an intention to readjust their respective property rights."

7. The *executory* provisions of a separation agreement are those provisions in which a party agrees to do or not to do a certain thing in the future, while *executed* provisions are those provisions which have been carried out, and which require no future performance. *Carlton v. Carlton*, 74 N.C.App. 690, 329 S.E.2d 682, 684 (1985).

8. *Cf.* W.Va.Code § 48–2–1(g) (1986) (defining "separation" as "the separation of the parties next preceding the filing of an action [for divorce], which separation continues, without the parties cohabiting or otherwise living together as husband and wife, and without interruption.")

9. The parties to a separation agreement could, of course, agree to have all provisions of the agreement survive a subsequent reconciliation. Such an express provision negates the reasoning behind the general rule, which assumes that the parties intend a permanent separation.

of the real estate he received under the agreement. The remainder of the agreement, to the extent it has not been executed, is unenforceable by virtue of the couple's reconciliation.

## II.

■ The remaining question is whether the property conveyed pursuant to the separation agreement, including appreciation or earnings thereon, is marital property subject to equitable distribution.

West Virginia Code § 48–2–32(a) (1986) sets out the general rule that marital property shall be divided equally between the parties to a divorce. Separate property remains the property of its owner. Code § 48–2–1(f)(3) provides that "separate property" includes:

[p]roperty acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage....

While the reconciliation invalidated the executory provisions of the separation agreement, the executed provisions which effected the transfer of property are valid and binding. W.Va.Code § 48–2–1(f)(6) provides that "separate property" also includes:

[a]ny increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) of this subsection which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.

We, therefore, find that property transferred pursuant to a separation agreement which later becomes invalid as a result of reconciliation of the parties is separate property not subject to equitable distribution. Thus, the marital home conveyed to Mrs. Kaminsky pursuant to the separation agreement, including any increase in the value thereof, is the separate property of Mrs. Kaminsky, not subject to equitable distribution. Likewise, the $30,000 proceeds from the sale of the real estate conveyed to Mr. Kaminsky, including appreciation and earnings thereon, is the separate property of Mr. Kaminsky, not subject to equitable distribution.

■ It appears from the record that the parties disagree as to how much of certain certificates of deposit held both individually and jointly represents proceeds from and earnings on the sale of the separate property. We recognize the difficulty of tracing the proceeds from the sale of real estate and any earnings thereon. This factual dispute, however, must be left to the trial court for resolution. Our holding requires that the proceeds from the sale of separate property and all earnings on those proceeds remain the separate property of Mr. Kaminsky. Money acquired by Mr. Kaminsky during the ten-year reconciliation from sources other than the sale of separate real estate and investment of the $30,000 proceeds, however, is marital property. W.Va.Code § 48–2–1(e) (1986).[10]

Although it may appear in hindsight that the wife in this case will emerge from the divorce with less "separate property" than her husband, we must presume, in the absence of evidence to the contrary, that the agreement of the parties was fair when entered into, and that the parties judged the value of the joint interests conveyed by each to be approximately equal. The wife, as well as the husband, is entitled to the appreciation in value of her separate assets. We also find that Mrs. Kaminsky is entitled to reasonable attorneys' fees.

We, therefore, reverse the decision of the Circuit Court of Marion County and remand for proceedings to determine an equitable distribution, in accordance with W.Va.Code § 48–2–32 (1986), of property

10. With respect to certificates in joint names, we note the recent decision of *Roig v. Roig,* 178 W.Va. 781, 364 S.E.2d 794 (1987), regarding the operation of a statutory gift presumption in the context of equitable distribution of marital property. Code § 48–3–10 (1986) provides that ordinarily when one spouse purchases property, taking title in the name of the other, a gift is presumed. Where, however, the issue is marital versus separate property, the statute requires that a gift (which would make the property "separate" by virtue of W.Va.Code § 48–2–1(f)(4)) be affirmatively proved. Where there is no gift, certificates that were purchased with marital assets are marital property, and certificates purchased with separate assets are separate property.

not conveyed pursuant to the separation agreement and any other marital property acquired during the ten-year reconciliation.

Reversed and remanded.