383 S.E.2d 548

**Chester A. KAMINSKY**

v.

**Meryle J. KAMINSKY.**

**No. 18872.**

Supreme Court of Appeals of
West Virginia.

July 21, 1989.

Robert M. Amos, Fairmont, for Meryle J. Kaminsky.

James O. Watkins, Jr., Fairmont, for Chester A. Kaminsky.

PER CURIAM:

This case is before the Court upon the appeal of Meryle J. Kaminsky (hereinafter "wife") from an order entered November 23, 1988 in the Circuit Court of Marion County which denied the appellant's motion to set aside a prior order wherein the circuit court adopted the recommendations of the family law master [1] in

1. Appellant raises two procedural errors that are not meritorious. First, appellant contends that the original trial court order is invalid since the court failed to make findings of fact and conclusions of law. The original order, entered August 19, 1988, specifically states that the court adopted the findings of fact and conclusions of law contained in the family law master's recommended disposition of the marital assets, filed with the court. *W.Va.R.Civ.P.* 52(a) reads in pertinent part:

> The findings of a commissioner to the extent that the court adopts them, shall be con-

sidered as the findings of the court. It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court.

*W.Va.Code*, 48A–4–10(c) [1986] further provides, in pertinent part:

> (c) The circuit court shall examine the recommended decision of the master, along with the findings and conclusions of the master, and may enter an order in conformance with the recommended decision.

regard to the equitable distribution of certain assets resulting from the appellant's divorce decree from the appellee, Chester A. Kaminsky (hereinafter "husband").[2] The record fully supports the finding that certain monthly benefits checks (from the United Mine Workers of America, the federal Black Lung program, and the Social Security program) that the husband received during nine years of marriage were placed into joint bank accounts and used as support for both the husband and the wife. Therefore, the trial court did not err when it refused to calculate the value of all monthly benefits checks over the nine-year period and treat the amount as marital property, subject to equitable distribution, because the bulk of the money was already expended for the benefit of the parties prior to the commencement of the divorce action, and only those amounts existing in the accounts at the time the divorce action was commenced could properly be considered marital property.

The factual background concerning this case was discussed by the court at length in *Kaminsky v. Kaminsky*, 178 W. Va. 786, 364 S.E.2d 799 (1987). We will briefly review these facts, as they relate to the issues before the Court today.

The Kaminskys were married from 1942 until 1975. They briefly separated in 1975, during which time they executed a real property settlement. The wife took title to the homestead and the husband took title to another piece of realty. The husband sold the realty in 1975 for $30,000 and subsequently placed the proceeds in certificates of deposit later that same year.

The Kaminskys reconciled after a six-month separation, at which time the husband returned to live with the wife in the homestead, now owned by the wife.

On December 4, 1984, the couple separated and commenced divorce proceedings.[3]

In our prior holding, this Court held that the executed portions of the 1975 settlement agreement were valid and that each party would retain such property and any appreciation on the property as separate property. Syl. pts. 1 and 2, *Kaminsky, supra*. Therefore, the wife would keep the home and any appreciation in value it attained, and the husband would keep the $30,000 in certificates of deposit and the interest earned on the certificates.

Thus, the marital home conveyed to Mrs. Kaminsky pursuant to the separation agreement, including any increase in the value thereof, is the separate property of Mrs. Kaminsky, not subject to equitable distribution. Likewise, the $30,000 proceeds from the sale of the real estate conveyed to Mrs. Kaminsky, including appreciation and earnings thereon, is the separate property of Mr. Kaminsky, not subject to equitable distribution.

*Kaminsky, supra*, 178 W. Va. at 790, 364 S.E.2d at 803.

We remanded the case to the circuit court because the parties did not execute other clauses in the 1975 separation agreement regarding other marital property accumulated prior to 1975, and to determine the value of the marital property accumulated from 1975 through December 4, 1984, all of which is subject to equitable distribution.

---

Second, appellant contends that the trial judge lacked the authority to forward the case to the family law master for determining the parties' marital assets, subject to equitable distribution. *W.Va.Code*, 48A–4–1(i)(9) [1986] provides, in pertinent part:

 (i) A circuit court ... *shall* refer to the master the following matters for hearing ...:

  ....

 (9) After the first day of January, one thousand nine hundred eighty-seven, contested divorce actions matured for final hearing, if in the discretion of the circuit judge such referrals are appropriate: Provided, That the circuit judge shall make such referrals on a case-by-case basis.

(emphasis added)

**2.** The trial court previously ordered the husband to pay the wife $450 per month alimony. The alimony award was not disputed by the parties. The only remaining contested issue in this proceeding concerns the proper amount of marital property, subject to equitable distribution.

**3.** This date was agreed upon by the parties in proceedings below.

The sole issue remaining before the Court today is the amount of the marital property accumulated between 1975 and 1984. In remanding the case for the accounting, we previously noted in regard to the additional marital property accumulated between 1975 and 1984 that the wife contended: "Mr. Kaminsky had acquired in excess of $109,000 [subsequently, alleged by the wife to be $105,000] in joint assets, consisting of certificates of deposit, savings account, a lump sum payment of black lung benefits, and interest." *Kaminsky*, 178 W. Va. at 787 n. 2, 364 S.E.2d at 800 n. 2 (1978).

On remand, the family law master reviewed the evidence to determine the remaining marital property, which largely consisted of various bank accounts.

The alleged $105,000 in marital property accumulated between 1975 and 1984 was computed by the wife's lawyer in the following manner:

$40,626.00—United Mine Workers of America pension benefits, 1976–84, 111 months at $366.00 per month.

$19,301.60—Federal Black Lung monthly benefits, 1976–84, 46 months at $419.60.

$17,837.90—Social Security benefits, 29 months at $615.10.

$19,386.00—Federal Black Lung lump sum award.

After reviewing the numerous debits and credits of various joint savings and checking accounts maintained by the parties from 1975 through 1984, the family law master concluded that the three monthly benefits checks received by the husband (UMWA pension, Black Lung and Social Security) were used by the husband to pay all household expenses and improvements.[4] The husband also gave the wife, who did not work outside the marital home during this period, $100 per month. As of December 4, 1984, the date divorce proceedings commenced, the balance of these accounts was: $5,673.61 in a checking account and $6,823.42 in a savings account.

The $19,386.00 Black Lung lump sum award, unlike the monthly benefits, was not spent by the parties. It was placed in a certificate of deposit. The interest on the certificate of deposit was not accumulated and presumed by the family law master to be co-mingled with the funds in the savings and checking accounts, which were used for the benefit of the parties.

Similarly, the interest on the $30,000 in certificates of deposit, the separate property of the husband resulting from the 1975 sale of realty he received from the settlement agreement, was co-mingled with the funds in the savings and checking accounts.

The family law master estimated the nine years of interest to be valued at $9,120.98.

The family law master then listed the existing marital assets, subject to equitable distribution through findings of fact XX and XXI:

"XX. The marital assets of the parties are as of 4 December 1984 as follows:

| | |
|---|---|
| Savings | $ 6,823.42 |
| Checking | 3,631.65 |
| Living Rm Suite | 1,200.00 |
| Console TV | 1,500.00 |
| Refrigerator & Stove | 600.00 |
| Subtotal | $13,755.07 |
| Black Lung sum | 19,386.40 |
| Total | $33,141.47 |

"XXI. Of the joint assets the parties have already received as follows:

| | [husband] | [wife] |
|---|---|---|
| Savings | $ 823.42 | $6,000.00 |
| Checking | 3,631.65 | 0.00 |
| Living Rm Suite | 0.00 | 1,200.00 |
| Console TV | 0.00 | 1,500.00 |
| Refrigerator and Stove | 0.00 | 600.00 |
| Black Lung | 19,386.40 | 0.00 |
| (lump sum) TOTAL | $23,841.47 | $9,300.00" |

As mentioned earlier, this Court previously determined that any appreciation in value of the wife's or husband's separate

---

**4.** The family law master noted in his recommended decision that he thoroughly reviewed 111 pages of bank statements of numerous accounts held by the parties from 1975 and 1984 and spent over six hours in preparing the recommended decision.

property resulting from the 1975 separation agreement would also be considered separate property. *Kaminsky,* 178 W. Va. at 790, 364 S.E.2d at 803. Therefore, the family law master deducted from the husband's holdings of the marital assets ($23,841.47) the estimated interest on the $30,000 certificates of deposit obtained through his sale of the separate property from the 1975 separation agreement ($9,120.98), thereby reducing the husband's holdings of the marital assets to $14,720.49.

The family law master concluded that the husband had $14,720.49 of the adjusted assets and the wife had $9,300.00 of the adjusted assets. Therefore, in order to equitably distribute the assets, the family law master recommended that the husband be ordered to pay the wife $2,710.24, so that each would receive $12,010.25 of the marital assets.

The wife's sole assignment of error regarding the distribution of the assets is that the family law master did not include the monthly benefits payments (UMWA, Black Lung and Social Security) received over the nine-year period as marital assets subject to equitable distribution.

This position is untenable. As of December 4, 1984, only the lump sum Black Lung award was retained by the parties. The family law master properly considered this amount a marital asset and included it in the equitable distribution of the marital property. The other monthly benefits payments (UMWA, Black Lung and Social Security) were used for the living expenses of the parties and the maintenance of the wife's home during the parties' nine years of marriage from 1975 through 1984. In this case, the balance in the checking account and the balance in the savings account as of December 4, 1984 are the only relevant figures for determining the remaining marital assets attributable to the monthly benefits checks that are subject to equitable distribution. To include as a marital asset the monthly benefits for nine years, totalling roughly $77,000, and consider them a currently existing martial asset, subject to equitable distribution, as of

December 4, 1984, would not only be a fiction but a misapplication of law.

*W. Va. Code,* 48–2–32(d)(1) [1984] mandates that in determining the value of the marital property subject to equitable distribution, the court must use the "net value of all marital property of the parties *as of the commencement of the action* or as of such later date determined by the court to be more appropriate."

" 'In a divorce suit the finding of fact of a trial chancellor based on conflicting evidence will not be disturbed on appeal unless it is clearly wrong or against the preponderance of the evidence.' Syllabus Point 3, *Taylor v. Taylor,* 128 W. Va. 198, 36 S.E.2d 601 (1945)." Syl. pt. 3, *Bickler v. Bickler,* 176 W. Va. 407, 344 S.E.2d 630 (1986). Since the family law master's finding of fact that the monthly benefits checks (UMWA, Black Lung and Social Security) were used as support for the parties during the nine-year period is wholly supported by the evidence, the trial court's adoption of the family law master's recommendations regarding the equitable distribution of the marital assets is affirmed.

The wife also assigns as error the trial court's adoption of the family law master's recommendation that the husband pay the wife $3,900 in attorney's fees. The wife contends the husband should be required to pay $5,340 in fees. However, as noted by the family law master, the wife's lawyer never provided the family law master with an itemized bill. The family law master reviewed the file and estimated that the $3,900 represented a reasonable fee based on the family law master's review of the lawyer's services prior to the initial appeal to this court in 1987 (valued by the family law master at $1,200); services for perfecting the appeal (valued by the family law master at $2,200); and services for the hearings before the family law master to determine the proper division of the assets (valued by the family law master at $500). Since there was no evidence before the family law master to indicate a greater

amount was necessary, we affirm the discretionary award, as there is no evidence to indicate that the award represents an abuse of discretion. *Sandusky v. Sandusky,* 166 W.Va. 383, 388, 271 S.E.2d 434, 438 (1981).

Similarly, the parties will bear their own costs and fees associated with this appeal.

Based upon the foregoing, the November 23, 1988 decision of the Circuit Court of Marion County is affirmed.

Affirmed.