## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Jesse Thomas Garland

v.

Doris Rock Garland

February 26, 1990

By JUDGE WILLIAM H. LEDBETTER, JR.

In this divorce suit, the primary issues are equitable distribution and spousal support. Specifically, the dispute focuses on the effect of a 1981 property settlement agreement between the parties and the appropriate classification of property under Virginia Code § 20-107.3 as a result of that agreement.

The parties were married in Maryland in 1965. They moved to Spotsylvania County in 1973 and purchased a house in Greenfield Subdivision. Throughout the marriage, Mr. Garland was employed as a water plant operator at the Quantico Marine Base. In addition, he worked as a security guard at Indian Acres, a trailer park resort in Spotsylvania County. Mrs. Garland worked throughout most of the marriage as an aide to elderly people, assisting them in their private homes. Mrs. Garland also cared for her mother, who lived with the parties.

In 1980, the parties separated. A divorce suit was filed. On March 17, 1981, at a time when both parties were represented by counsel, they signed a property settlement agreement. One of the terms of that agreement required that Mr. Garland convey his interest in the marital residence to Mrs. Garland. This transfer was effected by a deed of assumption dated March 19, 1981, and recorded the following day.

Shortly thereafter, the parties reconciled. The divorce suit was dismissed, and Mr. Garland returned to the home.

During the period of reconciliation, Mrs. Garland reduced her employment, and Mr. Garland made most, if not all, of the mortgage payments on the home. Nevertheless, when he asked his wife to reconvey the property, she flatly refused, apparently because of her lack of faith in the marriage's viability.

Mr. Garland began spending more and more time away from home. He acquired an interest in a lot at Indian Acres and frequently stayed in a trailer there. Finally, in 1985, he departed, and the parties have lived separate and apart since then.

Mrs. Garland still lives in the Greenfield Subdivision house with her mother. She complains of medical problems that limit her ability to work, but she continues to earn money as an aide. She is 60 years old. Mr. Garland, 54, resides in Springfield. He, too, complains of medical problems, and he no longer works as a security guard. He continues his employment at the Quantico water plant but will retire next year on full pension after thirty years' service.

No children were born of the marriage.

### Status of the Case

Mr. Garland filed this suit for divorce in October, 1987. Mrs. Garland responded and filed a cross-bill alleging desertion.

Depositions were taken on June 16, 1988, and on March 3, 1989. The court entered an agreed pendente lite order on February 14, 1989, by the terms of which Mr. Garland is to pay spousal support in the amount of $400.00 a month to Mrs. Garland until further order.

The matter was referred to a commissioner in chancery. By agreement, the commissioner relied upon the evidence taken by depositions and arguments of counsel but took no additional evidence. The commissioner filed a 28-page report on November 15, 1989.

In his report, the commissioner (1) found that Mr. Garland deserted Mrs. Garland without justification and recommended that Mrs. Garland be granted a divorce a vinculo matrimonii on that ground; (2) recommended that the court require Mr. Garland to pay the sum of $300.00 per month to Mrs. Garland as spousal support until his retirement;

(3) ruled that the marital residence is "marital property" under § 20-107.3(A); (4) ruled that Mr. Garland should receive a monetary award of $25,000.00; and (5) recommended that Mr. Garland be directed to pay to Mrs. Garland 50% of the marital share of his retirement benefits as he receives them, under § 20-107.3(G).

Both parties filed exceptions to the commissioner's report, and the exceptions were argued on February 5, 1990.

### Divorce

Mr. Garland left the marital home in 1985. He explained the reason for his departure:

> A compound of a lot of things, such as we simply could not get along, it was fussing and fighting continuously. Whatever I did, I did not do right, it was always wrong. It was just a compound of those things over and over and over, same thing it was the first time. I just had to get out of there. I just had to leave. Tr. 6/16/88, page 14.

The commissioner found no misconduct by Mrs. Garland and recommended that Mrs. Garland be granted a divorce on the ground of desertion under § 20-91(6).

When one of the parties has broken off the matrimonial cohabitation by departing from the place of residence, the burden of going forward with the evidence of justification rests upon the party claiming it, unless such justification appears from the testimony adduced by the other party. *Brawand v. Brawand*, 1 Va. App. 305 (1986); *Zinkhan v. Zinkhan*, 2 Va. App. 200 (1986). A gradual breakdown in the marital relationship is not legal justification. *Sprott v. Sprott*, 233 Va. 238 (1987).

The commissioner properly interpreted the evidence and correctly applied the legal principles that govern this issue. No justification has been shown for the departure, which has been proven by corroborated evidence. The court confirms the commissioner's report on this point and will award Mrs. Garland a divorce based on desertion.

*Equitable Distribution*

In their 1981 property settlement agreement, the parties agreed that Mr. Garland would convey the marital residence to Mrs. Garland and that Mrs. Garland would assume the mortgage. This provision was satisfied a few days thereafter by a deed of assumption. When the parties reconciled, nothing was done to alter or rescind the agreement or the legal status of the property.

Where parties remarry after a divorce, the marital community is not restored, and property acquired by the parties prior to their most recent marriage is separate property even if originally acquired by these same parties during a prior marriage to one another. Therefore, where a husband transfers his interest in marital property to the wife in connection with a property settlement agreement, the property becomes the wife's separate property, and upon remarriage, such property does not regain its status as marital property unless the parties agree otherwise. Stated differently, property brought into marriage retains its character, unless transmuted by commingling or by agreement of the parties; thus, if property is separate because it went to one party at the termination of a prior marriage, it remains separate upon a remarriage between the parties. *See* 24 Am. Jur. 2d, *Divorce & Separation* sect. 882; also, 6 *Equitable Distribution Journal*, pp. 28-29 (March 1989).

That legal principle is helpful but not dispositive here because the Garlands never divorced.

Under the circumstances of a case in which the parties entered into a property settlement agreement but never divorced, then reconciled, what is the effect of that agreement and the transfer of property pursuant to it?

As for the status of *legal title*, it is generally agreed that reconciliation invalidates all executory provisions of a property settlement agreement but has no effect on those provisions that have already been executed. *See, e.g.*, "The Effect of Reconciliation of Marital Agreements," 36 *Va. Lawyer*, # 7, pp. 12-17 (January 1990). Therefore, in this case, legal title to the marital residence remains with Mrs. Garland.

This does not resolve the question of the appropriate *classification* of the property under § 20-107.3.

In *Kaminsky v. Kaminsky*, 364 S.E.2d 799 (W. Va. 1987), the parties entered into a property settlement agreement in contemplation of divorce and executed transfers of real estate between them. The parties reconciled and lived together ten years until their final separation. The court addressed the issue raised in this case: whether the property conveyed pursuant to the property settlement agreement is "marital property" subject to equitable distribution. The court held that such property is the separate property of the transferee.

In *Brazina v. Brazina*, 558 A.2d 69 (N.J. Super. Ct. 1989), the court held that a reconciliation does not affect title to property which has been transferred to one of the parties pursuant to a separation agreement and that the property is separate property for the purpose of equitable distribution. (However, the court did hold that the appreciated value during the period of reconciliation is marital property. This result is not possible in Virginia because of the "unitary theory" of property classification. *See Smoot v. Smoot*, 233 Va. 435 (1987).)

"Marital property" and "separate property" are defined in § 20-107.3(A). However, the definitions do not address property acquired by one of the parties under facts such as exist in this case. Nevertheless, in *Wagner v. Wagner*, 4 Va. App. 397 (1987), the court said that marital property, *in the absence of a valid express agreement*, cannot become the separate property of one of the parties, thereby lending strength of Mrs. Garland's argument that the parties *can* transform marital property into separate property by agreement.

The deed by which Mrs. Garland acquired the marital residence did more than transfer legal title. The property was conveyed to her as "feme sole," "as her sole and separate equitable estate, pursuant to the separation agreement of the parties hereto, free from all debts, controls, and *marital rights* [emphasis added] . . . of any present or future husband." The property settlement agreement provides that it is a settlement of "all property rights presently held or held at any future time . . . and shall act to bar each party from *any and all rights* . . . ." [Emphasis added.]

After the reconciliation, Mr. Garland moved back into the residence and made mortgage payments. However,

it is apparent from the testimony that the reconciliation was shaky and that at no time did the parties intend to restore the house to its former character. Mr. Garland spent much of his time away from home. When asked to reconvey the property, Mrs. Garland refused. Based on the words and conduct of the parties during the reconciliation, it is clear that the property was not transmuted into marital property between the time of their reconciliation and their last separation.

For these reasons, the court concludes that the commissioner erred in his ruling that Mr. Garland is entitled to a monetary award. The marital residence is the separate property of Mrs. Garland, not subject to equitable distribution under § 20-107.3.

The commissioner's determinations regarding all other tangible property of the parties are confirmed. Because the disposition of these articles has already been accomplished and is essentially equal between the parties, the commissioner made no recommendation for transfers or a monetary award with reference to them. Considering all of the factors enumerated in § 20-107.3(E), the court confirms that conclusion.

The commissioner recommended that Mrs. Garland receive 50% of the marital share of Mr. Garland's retirement benefits as he receives them under § 20-107.3(G).

The statute permits the court to direct payments of a percentage of such benefits, in addition to a monetary award and transfers of jointly owned property, if such payments would be equitable under all of the circumstances of the case. Here, while the commissioner recommended such payments from Mr. Garland's retirement benefits, he had also recommended a monetary award of $25,000.00 to Mr. Garland based on the classification of the house as marital property. For the reasons explained above, the court is of the opinion that the house is Mrs. Garland's separate property, not subject to equitable distribution. Therefore, one side of the equation used by the commissioner to reach his conclusion no longer exists.

Although the house is not subject to equitable distribution, its existence as an asset in the hands of one of the parties can be considered in making an equitable distribution of the marital property, especially under the facts of this case. *See* § 20-107.3(E)(11).

It is appropriate that Mr. Garland retain his retirement benefits without any payment of a percentage of them to Mrs. Garland. To hold otherwise would permit a slavish adherence to the "marital versus separate property" classification to work an injustice on one of the parties.

Accordingly, the commissioner's recommendation regarding payments of a percentage of Mr. Garland's retirement benefits is rejected, and the court will direct no payments under § 20-107.3(G).

## Spousal Support

The commissioner recommends that Mr. Garland pay to Mrs. Garland the sum of $300.00 per month as spousal support until such time as he retires.

The court, having considered all of the factors enumerated in § 20-107.1, is of the opinion that this recommendation should be confirmed.

The court is mindful that one of the premises upon which the commissioner based his recommendation, i.e., the payment of retirement benefits to Mrs. Garland, has been rejected. On the other hand, however, Mrs. Garland has exclusive ownership of an asset which is not subject to equitable distribution and which, according to her own testimony, she intends to liquidate. With the income generated from the net proceeds from the sale of the house, together with her social security, the relative economic circumstances of the parties will be such as to justify little or no spousal support.

The decree will provide for payment of spousal support to Mrs. Garland in the sum of $300.00 per month until the death of one of the parties, Mrs. Garland's remarriage, or Mr. Garland's retirement, whichever first occurs.

## Costs and Fees

The commissioner's fee in the amount of $1,280.00 is approved. That cost and the costs of transcription of the depositions will be assessed against Mr. Garland, who prosecuted the suit. Each party will bear his or her own attorney's fees.