233 N.J. Super. 145 (1989)
558 A.2d 69
MARK BRAZINA, PLAINTIFF,
v.
DONNA BRAZINA, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Somerset County.
Decided March 6, 1989.
*147 John F. Richardson, for plaintiff.
John Ratliff, for defendant.
IMBRIANI, J.S.C.
This divorce case raises questions about a frequently recurring situation which has not previously been addressed by our courts. What is the effect of a reconciliation upon a property settlement agreement previously entered into at the time of a separation? For instance, does the reconciliation result in the automatic abrogation of the agreement?
*148 The parties married on May 23, 1981 and on August 25, 1982 the husband and his father purchased, in their joint names only, the marital home for $55,000. The father contributed the entire $10,000 cash deposit and they obtained a $45,000 mortgage loan. The husband testified that this was a gift to him by his father because he had previously paid for the college education of a brother. The wife was aware of this transaction and, indeed, attended the title closing. These parties lived in the home from the time it was purchased until their separation on March 31, 1985 when the wife and their son, who was born February 1, 1984, moved out. A property settlement agreement was signed on July 25, 1985 which required the wife to convey "any interest which she had in the house to the husband for consideration of the payment by the husband to the wife of $5,000." She signed the deed conveying her entire interest in the marital home on August 22, 1985 and received cash and a mortgage for the unpaid portion of the $5,000 which was paid in full on April 28, 1986.
The very next month, May 1986, the husband was involved in an automobile accident and sustained serious life threatening injuries. As the result of subsequent events they decided to resume living together and in August 1986 the wife and son returned to the marital home. They did not decide or even discuss what effect, if any, the reconciliation would have upon the property settlement agreement. No efforts were made to set aside the deed conveying the wife's interest in the marital home and the husband continued to pay to his wife $40 a week for child support as was required by the property settlement agreement. They resumed conjugal relations and adopted a living arrangement whereby the husband paid all expenses for the maintenance of the home (which was in his sole name) and the wife paid for the costs of food, household incidentals and clothing for her and the child.
They separated again in August 1988 and this divorce suit followed. The wife testified that during the two-year reconciliation they had a normal husband-wife relationship and held *149 themselves out to the world as a married couple. Consequently, she argues that, as a matter of law, the property settlement agreement should be deemed to have been abrogated as a result of the reconciliation. On the other hand, the husband asserts that there never was a reconciliation but only a "platonic" relationship in which they lived together as friends for their mutual benefit and they never reconciled. He contends, moreover, that even if a reconciliation occurred it should have no effect upon the validity of a property settlement agreement, unless the parties expressly agreed otherwise, which did not occur here.
What constitutes a reconciliation? The primary purpose of the court is to preserve the marriage and, if there has been a separation, to encourage a reconciliation, which we appreciate will not come easily because of the bitterness and harsh accusations that frequently accompany a separation. Spouses need time apart from each other to ponder whether they wish to remain married and to glean greater insight into the character and motivations of the other before they can forgive and forget. Not only does this take time to accomplish but it also often requires a "trial reconciliation" before they can agree to permanently resume the marriage in all its aspects. To encourage a reconciliation and the resumption of the marriage it is important that we not impose legal consequences which could discourage the parties from attempting a reconciliation out of fear that an unsuccessful reconciliation effort could result in adverse legal consequences. For these reasons we believe that the preferable rule is to hold that a reconciliation should not be deemed to have occurred until the parties have successfully completed the exploratory stage of a reconciliation and have agreed upon a true and genuine reconciliation, that is to say, when the parties have resolved their major matrimonial differences and agree to permanently resume their former relationship as husband and wife.
*150 Obviously what constitutes a reconciliation is not susceptible to a simple definition and generally depends upon the facts. Thus, it has been held that two isolated acts of sexual intercourse only amounts to an "attempt" to reconcile and does not constitute a reconciliation, Cooke v. Cooke, 34 N.C. App. 124, 237 S.E.2d 323 (1977); nor does a ten-day "trial reconciliation" even though it occurred in the former marital home. Camp v. Camp, 75 N.C. App. 498, 331 S.E.2d 163 (1985). On the other hand, Matter of Estate of Adamee, 291 N.C. 386, 230 S.E.2d 541, 546 (1976) held that when the parties resumed living with each other in the marital residence for eight months they are deemed "as a matter of law" to have reconciled whether or not they engaged in conjugal relations. From the few reported cases dealing with this issue the general rule appears to be that a reconciliation does not exist until the parties reside with each other for a sufficient length of time to permit the trier of fact to conclude that the parties resolved their major differences and agreed to permanently resume their marital relationship. In other words, the parties must have passed the "trial period" or "attempt to reconcile" stage. We are satisfied that the proofs in this case wherein the parties resided in the former marital home with their child for a period of two years clearly established that the parties had reconciled.
We must next determine what effect, if any, does the reconciliation have upon a property settlement agreement entered into at or about the time of the separation. Earlier cases generally held that reconciliation had no effect on the validity of a property settlement agreement on the theory that:
the promise to resume cohabitation is not, without more, even legal consideration. Unless the wife had legal justification for living separate and apart from her husband, she was under legal duty to resume cohabitation with him, notwithstanding the separation agreement, whenever he should request it.
In Hollander, 123 N.J. Eq. 52, 59 (Prerog. Ct. 1938)]. However, that archaic philosophy is no longer followed and the modern view is that the executory provisions of a property settlement agreement are deemed to be abrogated by a subsequent reconciliation *151 of the parties, unless it can be shown by the party seeking to enforce the agreement that the parties intended otherwise, but that the executed provisions of a property settlement agreement are unaffected by the reconciliation. See collection of cases in 35 A.L.R.2d 707, 732-733 (1954) and 42 C.J.S., Husband and Wife, § 601. The philosophy underpinning the theory of abrogation is that, since the policy of courts is to encourage and strengthen the bond of marriage, it is the presumed intent of the parties at the time of the reconciliation to resume the marital relationship in all respects and abrogate any prior agreements restricting or inhibiting the rights of one of the spouses, unless they indicate otherwise at the time of the reconciliation. Breen v. Breen, 144 App.Div.2d 920, 495 N.Y.S.2d 195 (1985).
Following the adoption of the 1971 Divorce Act, N.J.S.A. 2A:34-1 et seq., New Jersey adopted "the concept that marriage is a shared enterprise, a joint undertaking, that in many ways ... is akin to a partnership," Rothman v. Rothman, 65 N.J. 219, 229 (1974), in which both spouses have equal rights and mutual obligations to promote the happiness and fortunes of both. Consequently, many believe inherent in this concept is the philosophy that when parties reconcile after a separation any prior agreement should be presumed to have been abrogated because otherwise it would thwart the purpose of a marriage. However, it is recognized that the parties, as well as third parties, should have the right to rely upon the validity of executed portions of the property settlement agreement. To hold otherwise could create havoc not only for the parties themselves but for third parties as well who would be reluctant to contract with a separated but undivorced person for fear that a reconciliation may have occurred which could have created in the other spouse a legal interest in an asset even though that spouse relinquished all rights in that asset in an earlier property settlement agreement. For this reason most courts hold that while the executory portions of a property settlement agreement *152 are abrogated upon a reconciliation, executed portions are unaffected.
We could find only one New Jersey case dealing with this issue and it also recited the general rule. Weiner v. Weiner, 120 N.J. Super. 36 (Ch.Div. 1972). Nicholson v. Nicholson, 199 N.J. Super. 525 (App.Div. 1985), cited by the husband, is not to the contrary because there the property settlement agreement was entered into at the time of reconciliation  not at the time of separation  and is inapposite here. We are satisfied that, given our modern concept of marriage and the policy of our courts to strengthen marriages, New Jersey accepts the general rule. Consequently, since the wife conveyed her interest in the marital home to the husband prior to the reconciliation and that part of the agreement is executed it will be enforced. The wife has no legal interest in the home. Kaminsky v. Kaminsky, 364 S.E.2d 799 (W. Va. 1987) expressed the reason for the rule.
We believe the rule discussed above is a sound one, and therefore hold that reconciliation presumptively invalidates all executory provisions of a separation agreement, but does not affect any provision of such an agreement that has been executed. This rule reflects the fact that most couples who enter into a separation agreement contemplate a lasting separation, and ordinarily divorce, as part of the bargain. It presumes that couples who call off the separation intend to call off the division of property as well. It also protects legal title and unknowing purchasers of transferred property, while leaving the parties free to voluntarily reverse executed transfers. [at 802]
We next ask whether property previously conveyed to one spouse by the other, pursuant to the property settlement agreement, can be treated as a marital asset after, as occurred here, the parties have again separated and filed for divorce? While a reconciliation does not affect those provisions of an agreement which have been executed, it does not follow that an asset conveyed by one spouse to the other cannot be a marital asset subject to equitable distribution. By denominating an asset as a marital asset does not give a spouse legal title to property held in the sole name of the other spouse, but could under certain circumstances be used as a basis to award the spouse who does not own the asset a monetary sum for the contribution *153 such spouse made to the enhancement in the value of such asset while they resided together. As stated in Falise v. Falise, 63 Md. App. 574, 493 A.2d 385 (1985):
the only function of "marital property" is to form a base for a "monetary award." The Legislature never intended that either spouse could have a legal interest in the "marital property" if the other [but] merely intended to cure the title created inequity through the issuance of a "monetary award." [at 388]
In this case not only did the wife contribute to the marital home by assisting in its maintenance and upkeep with her household chores, but the income earned by both during the two-year period of reconciliation (and ergo during the marriage) was used to pay the mortgage, real estate taxes, insurance premiums and other home expenses. (Although all shelter expenses were technically paid by the husband from his earnings alone we are satisfied that this is a matter of form and not substance. Since they resumed their marital relationship whatever each earned constituted marital income and no matter who paid the shelter expenses the income used constituted marital income and is deemed to have been contributed by both.) As stated in Painter v. Painter, 65 N.J. 196 (1974) "courts are now empowered to allocate marital assets between the spouses, regardless of ownership," id. at 213, and although the increment in the value of property in the sole name of one spouse is generally immune from equitable distribution such immunity does not apply to the incremental value "contributed by the other spouse." Id. at 214, n. 4.
If we were dealing with an asset held in the sole name of one spouse which increased in value solely as the result of market forces beyond the reach of these parties, such as stock in a company listed on a national exchange, and the spouse who does not possess title to such asset did not in any way contribute to its enhancement in value, it would not be subject to equitable distribution. But when, as here, we have an asset whose increase in value is due in some degree to the use of marital income and the personal toil which both devoted to the home the asset is not entitled to immunity and is subject to *154 equitable distribution. The few cases in other jurisdictions that have passed on this issue do not hold uniformly because each decision invariably turns on the specific language in a state's divorce laws. Thus, Kaminsky v. Kaminsky, supra, held that the appreciation in value during the period of reconciliation was not subject to equitable distribution, while In re Marriage of Reeser, 635 P.2d 930 (Colo. Ct. App. 1981) held it was.
We believe that, under New Jersey law, the increase in the value of an asset held in the name of one party during a reconciliation is subject to equitable distribution. Conversely, we believe that since she relinquished and was paid for her rights in the marital home prior to the reconciliation she is not equitably entitled to any share of the value of the home as of the date of the reconciliation. We will order two appraisals of the home, one when the reconciliation commenced and the other at its termination, and also ascertain the amount of mortgages and liens on the home on those two dates and from those sums we will determine the increment in the value of the home equity, if any, that occurred during the reconciliation.
The final issue is what share of that increment should be awarded to the wife? (Obviously, under the circumstances of this case, the husband shall retain full legal title to the home.) The husband asserts that since the wife relinquished all of her marital rights in the property settlement agreement her interest should be based on the fact that they resided together for only two years and for such a short period she should receive either nothing or a very small share of the increment. On the other hand, the wife asserts that she only relinquished her rights in assets, not the marital relationship that commenced in 1981 and did not terminate until 1988. She contends that this should be treated as a seven-year marriage (1981 to 1988) or, at worst, if we exclude the 15-month separation, a six-year marriage. The husband's position appears to be premised on the assumption that the property settlement agreement effected a de facto divorce and the reconciliation a de facto remarriage. *155 But that is not what happened. The marriage was never terminated and what occurred was merely its interruption. The marriage continued and neither the property settlement agreement nor the separation altered this fact, although they are factors to be considered in determining how to equitably distribute the home. This was a marriage of at least six years and we believe that the wife is entitled to 50% of the increment in the value of the home equity during the two-year period of reconciliation because of her substantial contributions.