**Richmond**

VIRGINIA K. YEICH

v.

LLOYD GEORGE YEICH

No. 0755-89-2

Decided December 18, 1990

510

COUNSEL

C. Ridgeway Schuyler, III (Rae H. Ely; Rae H. Ely & Associates, on brief), for appellant.

Ronald R. Tweel (Peter McIntosh; Michie, Hamlett, Lowry, Rasmussen & Tweel, P.C., on brief), for appellee.

OPINION

COLE, J.—Virginia Klumpp Yeich and Lloyd George Yeich were married on December 30, 1977. Because they had considerable assets and each had previously been divorced, they entered into a premarital agreement. The couple experienced marital problems, and in 1982 Mrs. Yeich sold her property in Northern Virginia and moved to Albemarle County. Mr. Yeich stayed in Northern Virginia and continued to work for IBM. By fall of 1983, Mr. and Mrs. Yeich were in the process of reconciling their differences. Mr. Yeich began spending weekends with his wife in Albemarle County. He also stayed with his wife while working for six weeks at the University of Virginia for a governor's task force. Mr. and Mrs. Yeich executed a "Property Settlement Agreement," hereinafter referred to as the "1983 agreement," on December 22, 1983, and December 30, 1983, respectively. In this agreement, the parties agreed to waive all support and maintenance payments from each other. The document also provided for the division of the

couple's property. Almost immediately after signing the agreement the parties became reconciled. On December 30, 1983, they went to Albemarle County and spent the New Year's holiday together. When Mr. Yeich retired from IBM in approximately June of 1984, he moved to Albemarle County to live continuously with his wife. However, the marital problems persisted and the parties separated permanently on March 6, 1988.

On June 8, 1988, Mrs. Yeich filed a bill of complaint in the Circuit Court of Albemarle County seeking a divorce on the grounds of desertion and cruelty and spousal support from her husband. In his answer, Mr. Yeich asserted that Mrs. Yeich had waived her right to spousal support pursuant to the December 1983 agreement. He also filed a cross-bill alleging constructive desertion and acts of adultery by his wife. The cross-bill asserted the validity of the premarital agreement and the December 1983 agreement and asked that they be incorporated into the divorce decree.

On August 5, 1988, Mr. Yeich made a motion requesting the court to establish the validity of the premarital agreement and the 1983 agreement. A hearing was held on March 10, 1989, and on April 24, 1989, the court entered an order declaring the 1983 agreement valid and enforceable. The court stated that there was no evidence of any repudiation of the agreement, even though the parties reconciled immediately after its execution. The court also found the premarital agreement to be invalid for a lack of full disclosure. The court entered the divorce decree on June 23, 1989, which confirmed, ratified and incorporated the 1983 agreement, thereby denying Mrs. Yeich spousal support.

The issue in this appeal is whether the reconciliation between the parties abrogated the 1983 agreement in whole or in part. The case law from other jurisdictions is divergent. One line of cases holds that the intention of the parties determines what consequences the resumption of cohabitation will have. Other cases hold that reconciliation voids a separation agreement but not a property settlement. Still others hold that reconciliation abrogates the executory portions of the separation agreement but does not affect those portions which have been executed. *See generally* 2 H. Clark, *The Law of Domestic Relations in the United States* II-438-39 (1987); Annotation, *Reconciliation as Affecting Separation Agreement or Decree*, 35 A.L.R.2d 707 (1954).

There is no binding authority on this issue in Virginia. Although the issue was raised in *Roberts v. Pace*, 193 Va. 156, 67 S.E.2d 844 (1951), it was not reached because the court found that the parties had not reconciled. *Id.* at 161, 67 S.E.2d at 845. In *Barnes v. American Fertilizer Co.*, 144 Va. 692, 130 S.E. 902 (1925), the issue was raised concerning the effect a reconciliation between a husband and wife had on a decree settling property rights and alimony that had been approved in a divorce decree *a mensa et thoro*. *Id.* at 722-23, 130 S.E. at 911-12.

In *Barnes*, the American Fertilizer Company filed a petition for attachment against Mr. Barnes as principal defendant and Mrs. Barnes as a co-defendant, alleging a debt to be due the company. Mrs. Barnes filed an answer asserting that she was not indebted to Mr. Barnes and that the property attached belonged to her and her children by virtue of a consent decree that had been entered settling the property rights of the parties at the time of their divorce. This decree had been incorporated into the divorce decree *a mensa et thoro*. However, the parties had reconciled and the divorce decree was revoked under Code § 5115. 144 Va. at 696-98, 130 S.E. at 903-04. Both counsel for American Fertilizer and Mrs. Barnes agreed that Mrs. Barnes reconciled with her husband on the express condition that the rights of the parties remain as they were fixed by the decree. *Id.* at 704, 130 S.E. at 905-06. Thus, the supreme court found that the decree was revoked only to the extent it granted the divorce, and did not affect the decree as it pertained to the property settlement. *Id.* at 723, 130 S.E. at 911. Also at issue in *Barnes* was the effect of the reconciliation on the consent decree that had been incorporated into the divorce *a mensa et thoro*. In this context, the supreme court stated the general rule that a postnuptial agreement is not, as a matter of law, abrogated by the subsequent reconciliation of the parties. *Id.* at 723, 130 S.E. at 912.

However, in *Barnes* the agreement between the parties was approved by the court in the form of a consent decree. This decree was incorporated into a divorce decree *prior* to reconciliation. Also, the provision in question concerned the division of property rights and this provision had been executed. Therefore, *Barnes* does not control a case where the parties have entered into an agreement which has not been incorporated in a divorce decree *prior* to reconciliation and the controversy centers around the

spousal support provision which remains executory.

The trial court ruled that since there were no words, actions, or agreements by the parties after reconciliation which demonstrated their desire or intent to abrogate any provision of the agreement, the agreement remained in force. This approach has been labeled the "factual proof of intent" approach and centers on the effect the parties intended their reconciliation to have. The criticism of this approach is that while intent is easily determined where the parties clearly indicate by their words or conduct that they intend their reconciliation to rescind the agreement, intent is not easily discernible where the parties indicate nothing whatever about their intentions. *See* 2 H. Clark, *The Law of Domestic Relations in the United States* II-438 (1987). The question of intent must be viewed in light of the circumstances under which reconciliation takes place. If the parties clearly expressed their intent concerning the effect of the reconciliation on the agreement, they necessarily would reopen old wounds which have only just begun to heal. Given the fragile balance of emotions that may exist during the reconciliation, this approach is unacceptable.

Most courts hold that where the parties to a separation agreement thereafter reconcile their differences and resume the marital relationship, the separation agreement is terminated so far as executory obligations thereunder are concerned, but the separation agreement is not abrogated so far as executed provisions of the agreement are concerned.[1] 1 Nelson, *Nelson on Divorce and Annulment* § 13.14 (2d ed. 1945); 1 Lindey, *Lindey on Separation Agreements and Antenuptial Contracts* § 9.05 (rev. ed 1990); *see, e.g., In re Estate of Adamee*, 291 N.C. 386, 391, 230 S.E.2d 541, 545 (1976); *Brazina v. Brazina*, 233 N.J. Super. 145, 151-52, 558 A.2d 69, 72 (1989); *Kaminsky v. Kaminsky*, 364 S.E.2d 799, 802 (W. Va. 1987). We find that this majority rule is in keeping with Virginia public policy and adopt it. The parties, however, may enter into a valid reconciliation agreement providing otherwise.

The majority view that we adopt is premised on the assumption that at the time the parties executed the separation

---

[1] The executory provisions of a separation agreement are those provisions yet to be fully performed; the executed provisions are those provisions which have been fully performed. *Carlton v. Carlton*, 74 N.C. App. 690, 693, 329 S.E.2d 682, 684 (1985).

agreement they intended to live separate and apart; when they reestablished a matrimonial home they thereby necessarily intended to void those portions of the agreement that remain executory. *See In re Estate of Adamee*, 291 N.C. at 391, 230 S.E.2d at 545. This view is consistent with the public policy of the Commonwealth since it encourages and strengthens the marriage bond. It presumes intent at the time of the reconciliation to resume the marital relationship in all respects and intent to terminate any prior agreements restricting the rights of one of the spouses, unless the parties indicate otherwise at the time of the reconciliation. *Brazina*, 223 N.J. Super. at 151, 558 A.2d at 72. By validating all fully executed portions of the agreement, the legal title to property is unaffected but the parties are free to voluntarily reverse executed transfers. We believe that this rule fully protects the interests of all parties involved, including those that deal with parties experiencing marital problems.

The 1983 agreement stated that the parties intended to live separate and apart on a permanent basis. The agreement also provided that there would be no support payments made in the future. The provision waiving the right to support was, necessarily, executory. Therefore, under the rule that reconciliation abrogates executory provisions, this portion of the agreement was nullified. *See Purdy v. Purdy*, 138 Cal. App. 2d 402, 405, 291 P.2d 1005, 1007 (1956). Since the agreement concerning alimony was abrogated upon reconciliation, Mrs. Yeich may obtain alimony when suing for divorce. *Machado v. Machado*, 220 S.C. 90, ___, 66 S.E.2d 629, 635 (1951). We, therefore, reverse the trial court's ruling declaring the 1983 agreement valid and ratifying and incorporating the 1983 agreement into its decree.

A second issue on appeal is whether the trial court erred in excluding certain letters between the parties concerning their intent in regard to the 1983 agreement. Since we have decided that the "factual proof of intent" doctrine is not the law in Virginia, the exclusion of the letters was harmless error because the legal effect of reconciliation is not determined by the intent of the parties.

For the foregoing reasons, we reverse the decree of the trial court declaring the 1983 agreement valid. We remand to the trial court for further proceedings in accordance with this opinion.

*Reversed and remanded.*

Baker, J., and Willis, J., concurred.