**Richmond**

THELMA C. CRENSHAW

v.

JAMES E. CRENSHAW

No. 0040-90-2

Decided August 13, 1991

COUNSEL

Charles R. Haugh (Lair D. Haugh, on brief), for appellant.

Bruce R. Williamson, Jr. (Williamson & Toscano, on brief), for appellee.

OPINION

**COLEMAN, J.**—The issue presented in this appeal is the extent to which a property settlement agreement that was "approved and confirmed" by a 1964 *a mensa et thoro* divorce decree, entered in an earlier divorce proceeding between the parties, remains in effect.

After obtaining an *a mensa et thoro* divorce decree in 1964, James Crenshaw and Thelma Crenshaw reconciled. They resumed living together and did so for twenty-one years, believing that they were married. However, the *a mensa* divorce decree had not been revoked. In 1974, without the parties' knowledge, the trial court dismissed the suit and removed it from the docket. In 1985, the parties again separated and in 1986, James Crenshaw filed for divorce, which proceeding is the subject of this appeal. Thelma Crenshaw filed an answer and cross-bill. The trial court granted her a final divorce based upon James Crenshaw having deserted her in 1985; however, the court ruled that all rights to spousal support and the property rights, insofar as equitable distribution was concerned, were governed by the 1964 *a mensa* decree and the 1964 property settlement agreement which had been approved and confirmed by that decree. Thus, the court ruled that, because of the 1964 agreement and *a mensa* decree, the court was required to incorporate the terms of the agreement in its decree of divorce *a vinculo matrimonii*.[1] Accordingly, the trial court held that, because of the agreement and decree, it could not consider Mrs. Crenshaw's request for spousal support or either party's request for equitable distribution.

We hold that the trial court erred in ruling that it was required to incorporate the 1964 property settlement agreement into the divorce decree. First, the agreement, independent of the *a mensa*

---

[1] Presumably, the court based its ruling upon the provision of Code § 20-109 that "if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance by the spouse . . . or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract."

decree, was repudiated when the parties reconciled. Second, the agreement did not acquire any greater effect by virtue of the *a mensa* decree. The decree did not incorporate the 1964 agreement, either by reference or by adopting its terms, thereby making it enforceable as other decrees; rather, the decree merely "approved and confirmed" the agreement. Moreover, when the court dismissed the 1964 divorce proceeding, the dismissal had the effect of terminating the *a mensa et thoro* decree. Thus, the former decree, although it initially did no more than declare the agreement to be a valid, enforceable contract between the parties, to the extent it arguably made the agreement enforceable as a decree, became a nullity when the case was dismissed. Therefore, neither the agreement nor the decree prevented the trial court from adjudicating the issues of spousal support and equitable distribution. We reverse the ruling of the trial court and remand those issues for determination.

## FACTS

On May 1, 1986, James E. Crenshaw filed a bill of complaint in the Circuit Court of Albemarle County against Thelma C. Crenshaw, alleging adultery and constructive desertion as his grounds for divorce, and praying for equitable distribution of property under Code § 20-107.3. He stated that the parties had been married in 1964 in Greenville, South Carolina, and that they separated and had been living apart since October 12, 1985. Mrs. Crenshaw filed an answer and cross-bill stating that they were married on September 6, 1959, in Chesterfield County, South Carolina. She alleged that Mr. Crenshaw deserted her on October 12, 1985. At a September 24, 1986, *ore tenus* hearing to decide the issue of fault, the court ruled that it would grant Mrs. Crenshaw an *a mensa et thoro* divorce on the ground that Mr. Crenshaw had deserted her.

However, on October 2, 1986, before the court entered the *a mensa* decree, Mr. Crenshaw filed a motion to set aside the divorce ruling, alleging that on April 16, 1964, the Corporation (now Circuit) Court of Charlottesville had granted him an *a mensa et thoro* divorce on the ground that Mrs. Crenshaw had deserted him. In that decree, the court had approved and confirmed the settlement agreement dated March 17, 1964. The agreement provided that the parties were to "continue to live separate and apart from one another"; both waived spousal support

and maintenance; Mrs. Crenshaw was to receive their automobile; they agreed to sell their marital home and divide the proceeds; and both released their rights in the other's estate. Mr. Crenshaw concedes, as is implicit from his bill of complaint, that the parties reconciled and resumed cohabitation between 1964 and 1985. He acknowledges that the Charlottesville Corporation Court struck the earlier divorce case from its docket and dismissed the proceeding for inactivity under Code § 8-154 (now Code § 8.01-335(B)). Mr. Crenshaw contends, however, that the separation agreement is still a valid and binding agreement which was approved and confirmed by an *a mensa* decree which has not been revoked. He further contends that the agreement and decree settle and control the spousal support and property issues.

Mrs. Crenshaw responded that Mr. Crenshaw should be estopped from relying on the 1964 agreement and the decree at this stage of the proceedings, after having pled and proceeded in every respect as though the parties were married. Only when the court ruled that he was at fault in deserting the marriage did he raise these issues. Mrs. Crenshaw also argued that the settlement agreement had been abrogated by the parties having reconciled and by resuming cohabitation and living together in marriage for more than twenty years.

The trial court eventually granted Mrs. Crenshaw an *a vinculo matrimonii* divorce on the ground that James Crenshaw had deserted her. The *a vinculo* divorce decree, dated February 10, 1988, provided that: (1) Mr. Crenshaw was not estopped from relying on the April 16, 1964 decree; (2) the reconciliation had not abrogated the agreement which governed matters only through April 16, 1964; and (3) the court "reserved for determination at a later date, the issue of the availability of relief due to the rights and obligations arising as a result of the marriage relationship revived by cohabitation of the parties after April 16, 1964." On December 13, 1989, the court entered a final decree which provided that no spousal support or equitable distribution would be granted either party because those rights had been determined by the 1964 agreement and by the April 16, 1964 *a mensa* decree.

## I. MARITAL STATUS

In part, the trial court based its ruling that the property settlement agreement continued to be valid and enforceable and controlled the spousal support and equitable distribution questions because it had been approved and confirmed by the *a mensa* decree, which decree had not been revoked. Thus, although the contract may be valid and enforceable, separate and distinct from the effect of the *a mensa* decree upon the contract, we must consider whether, by affirming and approving the contract in the *a mensa* decree, the court made it enforceable as a decree which remains in force because it has not been revoked. The continued validity of the *a mensa* decree may be significant as to the enforceability of the contract and the provisions relating to spousal support and property rights. Even if the *a mensa* decree did not render the contract enforceable because it did not incorporate it, nevertheless, the enforceability of the 1964 agreement as a valid contract must independently be determined. If the contract is no longer enforceable, however, which we are prepared to so hold for the reasons that follow, the validity of the *a mensa* decree is still a significant issue because it may affect the marital status of the parties between 1964 and 1985 and their rights to spousal support and equitable distribution. In other words, assuming that the *a mensa* decree did not render the property settlement agreement presently enforceable and that it is no longer enforceable by its terms for whatever reason, nevertheless, if the *a mensa* decree which was not revoked remains in force, the question becomes what is the effect, if any, of the *a mensa* decree upon the court's authority to award spousal support or equitable distribution. For example, if the *a mensa* decree is extant, the court would be required to determine whether Code § 20-107.3, enacted after the *a mensa* decree, applies and allows the court to equitably distribute the parties' property. If it does, the court would be required to determine whether property acquired after the decree of divorce from bed and board was "acquired during the marriage." Furthermore, if the decree of divorce from bed and board continued in effect, the court would be required to determine whether the finding that Mrs. Crenshaw had deserted Mr. Crenshaw barred her claim for spousal support, or whether it could determine spousal support in the pending proceeding independent of that earlier finding. Thus, unless the reconciliation of the parties, without having the decree revoked, abrogated the decree, or unless

the trial court's action in striking the former proceeding from its docket and dismissing it terminated the *a mensa* decree, substantial questions remain for the trial court to consider and resolve in regard to the effect of the *a mensa* decree upon its authority to grant spousal support or equitable distribution.

The *a mensa et thoro* decree had not been revoked in accordance with the provisions of Code § 20-120, which prescribes:

> A decree of divorce from bed and board entered in a suit pursuant to [Code] § 20-95 shall at any time thereafter, upon submission of an order endorsed by both parties or counsel, be revoked by the same court which entered such decree of divorce.

Thus, unless the reconciliation of the parties or the court's action in striking the earlier divorce from the docket and dismissing it terminated the *a mensa* decree, it remains in effect, for whatever impact it may have upon the agreement or the parties' property rights which have not been determined by the court.

The effect of parties reconciling and resuming cohabitation after obtaining a divorce from bed and board, without having the *a mensa* decree statutorily revoked, presents a question of first impression in Virginia. It is not, however, an uncommon occurrence, and many decisions from courts in other jurisdictions have addressed the question. *See* Annotation, *Reconciliation as Affecting Decree for Limited Divorce, Separation, Alimony, Separate Maintenance, or Spousal Support*, 36 A.L.R.4th 502 (1985). The jurisdictions with statutes similar to Code § 20-120 have uniformly held that when the parties reconcile but fail to follow the prescribed statutory procedure to revoke the *a mensa* decree, the decree remains intact regardless of the intention of the parties. *Id.* at 508-11. Since marriage and divorce procedures in Virginia are purely statutory, we follow this line of cases and adopt that holding. Our courts have consistently taken the view that parties cannot by agreement and extrajudicial actions abrogate a divorce court's order or decree. *See Richardson v. Moore*, 217 Va. 422, 229 S.E.2d 864 (1976); *Losyk v. Losyk*, 212 Va. 220, 183 S.E.2d 135 (1971); *Schmidt v. Schmidt*, 6 Va. App. 501, 370 S.E.2d 311 (1988). Parties may not "abrogate the judgment [of divorce from bed and board] merely by ignoring it and resuming their marital status by voluntarily living together openly as husband and wife

and without going through the formality provided by the statute."
*Cecil v. Farmers Nat'l Bank*, 245 S.W.2d 430, 432 (Ky. Ct. App. 1951).

We turn to the effect, if any, which the court's action in striking from the docket and dismissing the earlier divorce proceeding under Code § 8.01-335(B) had upon the *a mensa et thoro* divorce decree. The Circuit Court of Charlottesville dismissed that case in 1974, after it had been pending for ten years since the last decree. The dismissal was without notice to the parties, pursuant to Code § 8.01-335(B), which provides:

> Any court in which is pending a case wherein for more than five years there has been no order or proceeding, except to continue it, may, in its discretion, order it to be struck from its docket and the action shall thereby be dismissed.

Code § 8.01-335 is more than a tool for docket control and management; subsection (A) provides for "discontinuing" the action when it is stricken from the docket after no order has been entered or proceeding has taken place in two years; however, subsection (B) provides "the action shall thereby be dismissed" when it is removed from the docket after it has been dormant for five years. The purpose of subsection (B) is "to eliminate from their [the courts'] dockets cases for which there is no reasonable prospect of trial . . . [in] actions long forgotten or abandoned by litigants and lawyers." *Nash v. Jewell*, 227 Va. 230, 234, 315 S.E.2d 825, 827 (1984). We recently held in *Smith v. Smith*, 4 Va. App. 148, 151, 354 S.E.2d 816, 818 (1987), that when the court dismissed a divorce case under Code § 8.01-335(B), it terminated by operation of law the *pendente lite* support decrees which had been entered in the case. Certainly, an *a mensa* decree is more far reaching than a *pendente lite* support or custody decree in that it terminates the *marital* rights and responsibilities between a husband and wife. *See Stewart v. Commonwealth*, 219 Va. 887, 252 S.E.2d 329 (1979).[2] However, a divorce from bed and board does not dissolve the bonds of matrimony between the parties, and it does not affect the property rights of the parties who continue to be husband and wife, *Gum v. Gum*, 122 Va. 32, 39, 94 S.E. 177,

---

[2] Significantly in *Stewart v. Commonwealth*, 219 Va. at 891, 252 S.E.2d at 332, the *a mensa* decree expressly provided that the parties "be perpetually protected in their persons and property."

179 (1917), unless the *a mensa* decree expressly provides that the separation shall be perpetual and shall sever property rights. *Id.*; *Stewart*, 219 Va. at 891-92, 252 S.E.2d at 332. Nevertheless, we hold that dismissal of a case under Code § 8.01-335(B) also terminates a decree of divorce from bed and board.

■ We are mindful that situations occur where parties have obtained an *a mensa* decree and have continued to live separate and apart for more than one year without, for whatever reason, having the bed and board decree merged into a final decree of divorce, and, after five years, the trial court strikes the case from its docket for inactivity under Code § 8.01-335(B). While we do not directly address the rights of the parties in that situation, the logical extension of our decision might appear to lead to the holding that an estranged spouse *may* retain property rights in the other's estate. A divorce from bed and board, however, does not divest married people of their property rights or claims, *Gum*, 122 Va. at 39, 94 S.E.2d at 179, unless the decree expressly so provides. *See* n. 2, *supra*, discussing *Stewart v. Commonwealth*. Even so, a major consideration behind Code §§ 8.01-335(A) and (B) is that parties should bring their litigation to an expeditious conclusion, resolve their disputes, determine their rights, and not congest a court's docket with stale and inactive claims. A panel of this Court, in regard to *pendente lite* orders, pointed out in *Smith* that divorce actions are generally dismissed under Code § 8.01-335(B) because (1) the parties have reconciled and resumed cohabitation, (2) one party has filed a second or simultaneous divorce case, or (3) the parties continue to live separate and apart. 4 Va. App. at 151, 354 S.E.2d at 818. Likewise, an *a mensa* decree, which does not grant complete and final relief, should not be held to continue in force when the proceeding in which it has been entered has been dismissed based upon the assumption that the action has been "long forgotten or abandoned by litigants and lawyers." *Jewell*, 227 Va. at 234, 315 S.E.2d at 827. Accordingly, we hold that dismissal of a divorce suit, in which no decree or proceeding has taken place within five years, pursuant to Code § 8.01-335(B) terminates an *a mensa* decree which may have been entered therein.[3]

---

[3] Had the Crenshaws desired to proceed with that action, Code § 20-121.1 provides for reinstatement:

> In any suit which has been stricken from the docket, and in which complete relief has not been obtained, upon the motion or application of either party to the original

In view of the foregoing holding, the agreement and not the decree, which only declared the agreement valid, controls the parties' property rights. The agreement had not become merged in the decree since it was not incorporated therein. Thus, we must now decide whether the property settlement agreement continues to be in effect.

## II.  PROPERTY SETTLEMENT AND SUPPORT AGREEMENT

We consider, independent of the *a mensa* decree, the trial court's ruling that the 1964 property settlement agreement remains a valid, enforceable bilateral contract between the parties. We reverse the trial court's holding that the agreement was still binding on the parties and that the court was compelled to incorporate that agreement into the *a vinculo* divorce.

▆▆▆ Clearly, the settlement agreement was valid when the parties entered into it. When the trial court "approved and confirmed" the agreement, that holding constituted a judicial finding that the agreement was a valid and enforceable contract. *See Forrest v. Forrest*, 3 Va. App. 236, 240, 349 S.E.2d 157, 160 (1986). However, every valid contract, even one which has been judicially declared to be valid, may be abrogated, revoked, or repudiated by the actions or agreement of the parties or by the terms and conditions of the agreement itself. In a recent case, *Yeich v. Yeich*, 11 Va. App. 509, 399 S.E.2d 170 (1990), we held that a reconciliation between separated spouses abrogated the executory obligations in a property settlement agreement, but did not affect any of the provisions that had been executed. In *Yeich*, we said:

> The majority view that we adopt is premised on the assumption that at the time the parties executed the separation agreement they intended to live separate and apart; when

proceedings, the same shall be reinstated upon the docket for such purposes as may be necessary to grant full relief to all parties.

However, where the parties have reconciled, or resumed cohabitation, as had the Crenshaws, or periodically lived together as man and wife, the separation has not continued without interruption. They could not upon reinstatement have had the *a mensa* decree merged into a final decree divorce. *Anderson v. Anderson*, 196 Va. 26, 82 S.E.2d 562 (1954), *overruled on other grounds*, *Petachenko v. Petachenko*, 232 Va. 296, 350 S.E.2d 600 (1986).

they reestablished a matrimonial home they thereby necessarily intended to void those portions of the agreement that remain executory. This view is consistent with the public policy of the Commonwealth since it encourages and strengthens the marriage bond. It presumes intent at the time of the reconciliation to resume the marital relationship in all respects and intent to terminate any prior agreements restricting the rights of one of the spouses, unless the parties indicate otherwise at the time of the reconciliation. By validating all fully executed portions of the agreement, the legal title to property is unaffected but the parties are free to voluntarily reverse executed transfers. We believe that this rule fully protects the interests of all parties involved, including those that deal with parties experiencing marital problems.

*Id.* at 513-14, 399 S.E.2d at 173 (citations omitted). The holding in *Yeich* controls whether the 1964 property settlement agreement between the Crenshaws remains valid in regard to the issues of spousal support and property. The issues of spousal support and of "future claims" are executory by their nature. Those provisions in the property settlement agreement which have not been executed are no longer enforceable under the agreement. Furthermore, the consideration and terms of the agreement were that the parties were to live separate and apart. Reconciliation abrogates the executory provisions of the agreement. Accordingly, we reverse the decision of the trial court that the 1964 agreement controls and prevents the court from awarding spousal support or equitable distribution. We remand those questions to the trial court for determination.

*Reversed and remanded.*

Barrow, J., and Cole, J.,* concurred.

---

* Judge Cole participated in the hearing and decision of this case prior to the effective date of his retirement on April 30, 1991 and thereafter by designation pursuant to Code § 17-116.01.