## CIRCUIT COURT OF FAIRFAX COUNTY

Jon R. Mills

v.

Lisa D. Mills

May 18, 1995

Case No. (Chancery) 132083

BY JUDGE THOMAS S. KENNY

This matter is before the court on defendant's motion for relief *pendente lite* for spousal support, child support, and child custody. Defendant Lisa Mills contends that although her husband Jon Mills is not the biological father of her child born in November 1991, he is bound by several express agreements and the principles of equitable estoppel to provide support for the child. Complainant, on the other hand, argues that the provisions of a property settlement agreement between the parties preclude defendant from seeking spousal and child support. Under the terms of the said agreement, the parties mutually waived any claim for spousal support and further acknowledged that complainant could not be held liable for the support of a child admittedly not his by birth. Defendant asks this court to find the property settlement agreement invalid on the ground of unconscionability and to enforce instead complainant's express promises made before and after the birth to support the child as if it were his own.

After a full hearing on the matter, I took the matter under advisement. For the reasons set forth below, I believe the property settlement agreement is valid and enforceable and accordingly find the complainant not liable to the defendant for either spousal or child support.

Lisa and Jon Mills were married in September, 1989. In early 1991, Mr. Mills discovered his wife had become pregnant by her previous husband, J. L. Holup. According to Ms. Mills, the complainant promised to support the child and accept it as his own because the parties had wanted to have a child together. Some time later, however, the relationship between the

parties deteriorated, and a separation seemed imminent. A few months prior to the birth, the Millses and Mr. Holup met in an apparent attempt to make financial provisions for the birth and early care of the infant and executed three separate documents.

The first document, prepared by Mr. Mills or his lawyer, constituted a property settlement agreement executed between Mr. and Ms. Mills. Under the terms of the agreement, Mr. Mills agreed to make a lump sum payment to his wife in the amount of $5,000, and the parties waived any further claim for support and maintenance for themselves. While Ms. Mills also waived any interest in the marital residence, she was permitted under the agreement to remain in the residence until August, 1992 or the sale of the home, whichever came first. In addition, the agreement acknowledged that Mr. Mills was not the father of the expected child and could not be held liable for any child support. If the parties reconciled, however, Mr. Mills agreed to adopt the baby. Both parties testified that the version finally signed was the fourth draft that had been prepared.

The second document was an agreement prepared by Mr. Holup's lawyer. In the second document, which was signed by the Millses and Mr. Holup, Mr. Holup denied paternity of the child. Mr. Mills, in the same affidavit, acknowledged he was the father of the baby and accepted all rights and responsibilities concerning the child as its father. It is not known when or if this document was discussed prior to its execution.

Mr. Holup then executed the third document, a promissory note in the amount of $6,500 made payable to Lisa and Jon Mills in monthly installments of $300.00. At the time of the hearing, Mr. Holup had (according to Mr. Mills' testimony) paid all but $100 of this note. Most of the proceeds were deposited in a DuPont FCU account, in the name of Mr. and Mrs. Mills and the baby. Mr. Mills maintains that he has never withdrawn any funds from this account, but acknowledges that payments received before the DuPont account was opened in October, 1992 were spent by the parties for the child. This matter had been under negotiation between Mr. Holup and Ms. Mills since sometime in May.

Apparently, the parties left the negotiations satisfied they had each achieved what they wanted from the bargain. Mr. Mills sought a separation from his wife, but was willing to permit her to remain in the marital residence for a year until she could make other provisions for herself. Mr. Holup desired an acknowledgment that he was not responsible for child support, in return for which he was willing to contribute to the birth expenses and care of the infant. Ms. Mills, for her part, was primarily

concerned with making financial and living arrangements for herself and the child. While the documents achieved each party's desired end, they are inherently inconsistent.

After the birth of Victoria in November, 1991, the parties continued to live together, and according to testimony presented at the hearing, held themselves out as a family. Mr. Mills appeared by all accounts the active, engaged father. He attended the delivery of the baby, participated in the feeding and medical care of the infant, and declared the child as a dependent on his insurance and tax forms. Family and friends assumed the child was his own. The parties also maintained appearances as a married couple, continuing to entertain and vacation together.

This status continued well past the August 1992 deadline. In August, 1993, Mr. Mills finally asked his wife to move out of the marital residence. Purportedly, in consideration for Ms. Mills' departure, Mr. Mills promised to provide spousal support for two years and full child support. Mr. Mills filed for divorce in October, 1993. Ms. Mills and Victoria vacated the marital home in November, 1993, more than a year after the August, 1992 departure date designated in the property settlement agreement.

After Ms. Mills' departure from the marital residence, Mr. Mills paid his wife $1,400.00 per month in support. He increased the support to $1,800.00 in May, 1994 to cover the additional expense of the child's nursery school. In September, 1994, Mr. Mills presented his wife with an addendum to the property settlement agreement which acknowledged he was not obligated to provide support for the child. Ms. Mills refused to sign the addendum and filed the present motion for *pendente lite* relief.

Defendant now asks this court to hold Mr. Mills liable for child and spousal support pursuant to several express agreements and the principles of equitable estoppel. Citing the Supreme Court's decision in *T. v. T.*, 216 Va. 867 (1976), Ms. Mills argues that though her husband is not the biological father of her child, he is nevertheless bound to provide support by his express contracts to treat the infant as his own. The court in *T. v. T.* found an express oral contract for support was established where the husband with full knowledge of his wife's illegitimate pregnancy promised to treat the child as his own.

Mr. Mills, on the other hand, distinguishes this case from *T. v. T.* by pointing to the parties' subsequent specific agreement waiving child support in the property settlement agreement, because Mr. Mills was not the biological father of the infant.

One of the most troublesome aspects of this case is the husband's contemporaneous execution of a sworn statement that he *is* the father of the child and would accept all rights and responsibilities of fatherhood (the "paternity statement"). The only way I can reconcile the inherent conflict between this paternity statement and the property settlement agreement is by considering the purpose of the paternity statement. It was drawn by Mr. Holup's lawyer with the self-evident purpose of relieving Mr. Holup of responsibility for Victoria. Mr. Mills evidently felt that he was already protected by the PSA from any *monetary* responsibilities of fatherhood.

Although both the PSA and the paternity statement are silent as to the Holup promissory note, it is significant that all three were executed simultaneously, indicating that the note was consideration for the paternity statement being signed.

I agree with Mr. Mills' position on this issue. The PSA superseded prior agreements as to support of the child.

Notwithstanding the Property Settlement Agreement, Ms. Mills contends that principles of equitable estoppel obligate Mr. Mills to support Victoria, because his earlier promise of support induced her to forego the opportunity for a first-trimester abortion. I believe that this argument fails because of the complete lack of any testimony that Ms. Mills would have had an abortion in the absence of Mr. Mills' promise of support. In other words, there was no evidence of reliance by her on this promise as inducement.

Next, Ms. Mills argues that the agreement to waive child support was abrogated by the subsequent reconciliation of the parties. *See Yeich v. Yeich*, 11 Va. App. 509 (1990). Again, I disagree. What she describes as a "reconciliation" is in fact not much more than what the parties had agreed to in the PSA. Although Mr. Mills allowed her and Victoria to stay on in the house longer than agreed, he testified that this was due to an unwillingness to throw her out when she had no place else to go. He attributed this reluctance to being from the Midwest, where one does not do these things. In the absence of a true reconciliation, the executory provisions of a separation agreement are not abrogated. *Roberts v. Pace*, 193 Va. 156 (1951); *see Smith v. Smith*, 19 Va. App. 155 (1994) (reconciliation does not terminate PSA where agreement specifically requires modifications to be signed in writing).

Finally, Ms. Mills argues that the property settlement agreement is so unconscionable as to be unenforceable. *Derby v. Derby*, 8 Va. App. 19 (1989). At this point in the litigation, it is not necessary or appropriate to

evaluate whether the agreement as a whole is or is not unconscionable. We are concerned only with the waiver of support. As for waiving spousal support, my estimate is that there is a high likelihood that a woman carrying another man's child would have an uphill fight in obtaining spousal support, but in this case Mr. and Ms. Mills negotiated an agreement whereby she got a $5,000 lump sum payment and a place to live for her and Victoria for a year. I cannot say that the waiver of continuing spousal support is unconscionable.

Child support is normally another matter, since the parties cannot negotiate away a child's right to support by her parents. *Kelley v. Kelley*, 248 Va. 295 (1994). In this case, however, everyone agrees that Victoria is neither the biological nor adopted daughter of Mr. Mills. Therefore, any obligation he has to support her would be based on contract. He initially promised to provide that support and then in this PSA the parties agreed that he would not. I have already indicated that both Mr. Mills and Ms. Mills, as well as Mr. Holup, got what they were looking for out of the series of agreements in August 1991. What about Victoria? What did she get? Well, she got her birth expenses taken care of by Mr. Mills' insurance; she got a place to live, in a stable and comfortable environment, for at least a year; she got the appearance of legitimacy; and she was the beneficiary of a "nest egg" provided by her biological father. On balance, I cannot say that this is much of a bargain, but it is also not so unfair as to be unconscionable.

After the PSA was executed, there was one more time that Mr. Mills allegedly promised to support Ms. Mills and Victoria, and that was in the fall of 1993 when he was finally trying to get them out of the house. Although the evidence is not conclusive on whether such a promise was ever made, at best it would be a promise made in consideration of something that Ms. Mills was already obligated to do (that is, move out of the house) and seriously delinquent on. I therefore believe that such a promise, if made, would be unenforceable.

Mr. Mills originally agreed to support Victoria. Later, Ms. Mills and he renegotiated this promise in exchange for something else in a series of agreements that included the biological father of the child. Ms. Mills' expectations that Mr. Mills would support the child were supplanted by the parties' subsequent written agreement canceling all prior promises on the matter and precluding any claim for support from being brought against Mr. Mills. Having sought and obtained the benefits of a new bargain, defendant cannot now ask me to hold her husband to his old one.

In conclusion, the parties' property settlement agreement is valid and enforceable and supersedes the parties' prior understandings on the issue of support. Pursuant to the terms of said agreement, I find complainant not liable for child or spousal support.