# CIRCUIT COURT OF ROCKINGHAM COUNTY

Maurice McCall

.v.

Claudette McCall

September 4, 1997

Case No. (Chancery) 15981

BY JUDGE JOHN J. MCGRATH, JR.

This matter came before the Court on August 29, 1997, upon defendant's Motion to Set Aside an Agreement that was entered into on February 5, 1988, and which provided for the equitable distribution of the couple's property, spousal support, child support, and related matters. An *ore tenus* hearing was held where the parties and other witnesses testified and where a number of documents were submitted into evidence relating to the dissolution of the marriage of the parties.

Briefly stated, Maurice McCall and Claudette McCall began living together sometime in 1980 or 1981. A child was born to them on November 16, 1981; however, they were not married until May 2, 1984. Shortly after their marriage, they began to experience serious domestic problems. As a result of this, Mr. McCall retained an attorney to assist him in negotiating a separation agreement with his wife. Mrs. McCall, in turn, hired an attorney and an agreement was entered into on February 21, 1985, which provided for a division of the parties' personal property and a one-time lump sum $2,000.00 payment of spousal support to the wife and other related provisions governing child custody and support. (Plaintiff's Exhibit 4.) Shortly after executing the 1985 agreement, the parties reconciled and resumed living together as husband and wife.

Sometime in late in 1987 or early 1988, the parties again began to experience severe domestic problems. The nature of the problems appear to

have involved a fair amount of physical and mental abuse of the wife by the husband, but there is some evidence that the wife was also belligerent and physical with the husband. There were a great number of verbal altercations between the parties which were witnessed by their neighbors and relatives.

In or about January or February of 1988, therefore, the husband decided to again go to his attorney to prepare another separation agreement. The implication from the testimony given was that both parties were operating under the assumption that since they had reconciled after the signing of the 1985 Agreement, the 1985 Agreement was no longer an effective agreement.

At this time the husband retained the same attorney he had used in 1985, but the wife, because she stated that she did not have sufficient resources, did not bother to retain an attorney for the purposes of negotiating or reviewing the 1988 agreement. Again, the 1988 agreement was signed by the wife and the husband, and it is quite similar to the 1985 agreement, except this time the husband paid the wife $1800.00 in lump sum spousal support. In the division of the marital property, the wife received none of the husband's pension benefits nor did she receive any interest in the marital residence, which had been acquired by the husband prior to the marriage but on which there had been substantial sums of money expended to expand and remodel the home.

After the signing of the 1988 agreement, the parties again reconciled in approximately December of 1988. The parties then continued to live together as man and wife until July 10, 1995, at which time they separated and have continued to live separate and apart up to the time of the hearing.

During the approximately seven years after their past reconciliation, the parties expended significant sums of money to essentially double the size of their home and to remodel it. Although the home was in the sole name of the husband and had been purchased by him prior to their marriage (but during the period of their cohabitation), the re-financing deed of trust that was executed to finance the additions and modifications to the home was signed by both Mr. McCall and Mrs. McCall.

The defendant wife challenges the validity or enforceability of the 1988 agreement on essentially four separate grounds: (1) that the agreement is void because it is unconscionable; (2) that the agreement is void because it was signed under duress; (3) that the agreement was effectively terminated by the reconciliation of the parties in the early part of 1989; and (4) that the plaintiff is estopped from relying on the agreement.

After the presentation of the defendant's evidence on the invalidity of the agreement, the Court granted the plaintiff's Motion to Strike the claim of unconscionability because there was insufficient evidence presented showing the respective amounts of the marital property that had been allocated by the

parties. See *Drewry v. Drewry*, 8 Va. App. 460 (1989). However, the Court required the case to go forward on the issue of whether the agreement was signed under duress and/or whether the agreement was effectively nullified by the parties' reconciliation in 1989 and/or whether the plaintiff was estopped.

## I. *Is the Agreement Void Because It Was Signed Under Duress?*

The evidence presented by Mrs. McCall and witnesses called on her behalf laid out a fairly strong case that Mr. McCall was often physically abusive and often engaged in mental and verbal abuse of Mrs. McCall. Mr. McCall, in his testimony, did not deny that he had on occasions hit his wife and engaged in verbally abusive behavior, but he did minimize the number of times and the severity of such acts. Naturally, Mrs. McCall characterized the violence and domestic abuse as having occurred on a nearly continuing basis. There was some evidence of at least one encounter in which Mrs. McCall fled down the street after having one or more of her fingernails ripped off by her husband and needed to receive assistance from their neighbors.

The obligation of the party asserting that a contract was signed under duress is to establish by clear and convincing evidence that, in fact, they were subject to such external pressures and compulsion from the other party to the contract that their signing of the agreement was not a product of their free will, but had been forced upon them. See, e.g., *Pelfrey v. Pelfrey*, 25 Va. App. 239 (1997); *Division of Social Services v. Unknown Father*, 2 Va. App. 420 (1986). Although Mrs. McCall makes a fairly good case in this regard, she ultimately must fail in proving this claim because of the similarity between the 1985 and the 1988 agreement.

As previously noted, Mrs. McCall had a capable attorney representing her during the negotiations for the 1985 agreement. The attorney had extensive contact with Mrs. McCall and with the husband's attorney and appeared to have been actively engaged in assisting Mrs. McCall in reaching an agreement which both of the parties considered fair and equitable. Although Mrs. McCall did not have the aid of an attorney in preparing the 1988 agreement, it is very similar to the agreement entered into in 1985 when she did have counsel. Therefore, by looking at the history of the parties' negotiations concerning these agreements, the Court cannot find that she entered into the 1988 agreement under duress. Therefore, her claim for invalidity based upon duress is rejected.

## II. *Was the 1988 Agreement Terminated by the Parties' Reconciliation?*

Mrs. McCall was unwavering in her testimony that it was her understanding that each of the agreements she had signed, the 1985 Agreement and the 1988 Agreement, were agreements that simply governed the parties' conduct during a period of separation and would be incorporated in a final decree of divorce if they were not reconciled. Her testimony was that both she and her husband operated under the belief that once they reconciled for a period of time, the prior agreement was no longer in force and effect. Mr. McCall, on the other hand, is adamant that the 1988 Agreement was supposed to be a final agreement and was supposed to fix forever the respective liabilities of the parties arising out of their marriage.

It is interesting to note that neither of the agreements bear a title and are simply referred to as "This Agreement" and that neither the 1985 nor 1988 Agreement had the now relatively standard provision that the agreement survives reconciliation of the parties. The agreements entered into by these parties were simply silent on that point of the effect of reconciliation.

It is the Court's view that Mrs. McCall's recitation of the parties' intentions in entering into the contracts are borne out by the facts in evidence. First, the fact that the parties went back to execute a 1988 Agreement which was very similar to the 1985 Agreement because they had reconciled after the execution of the 1985 Agreement is certainly strong circumstantial evidence that both parties in 1988 thought that they needed a new agreement to reflect the fact that they were separating for a second time after a reconciliation.

Secondly, after their second reconciliation in late 1988, they remained living together for approximately seven years. Mrs. McCall testified that after they had reconciled and while they were at the marital residence, they went into the backyard and burnt the 1988 Agreement to signify that their separation was over and done with and that they had reconciled and intended to live as husband and wife without the need of any agreement. Not surprisingly, Mr. McCall denies that any such thing happened.

It is worth noting, as is described above, that after this reconciliation in 1988 the parties expended significant sums (apparently approximately $40,000.00 on a $30,000.00 home) to renovate and enlarge the marital residence which was in the sole name of the husband. It is also noteworthy that a part-time business operated by the husband began to expand during this period of time and the wife contributed significantly to it by working for him as a house and office cleaner and also helping him to keep the business records.

The plaintiff's argument is simple and straight forward. The plaintiff argues that the Premarital Agreement Act (§§ 20-147 to 20-155 of the Code) requires that an agreement settling the rights and liabilities of the parties to a marriage must be in writing and signed by both parties (§ 20-149), and that such an agreement may be "revoked only by a written agreement signed by the parties" (§ 20-153). The plaintiff then argues that there is no evidence that there was any writing revoking the 1988 Agreement and, therefore, it remains in full force and effect.

The plaintiff further cites to the Court of Appeals' decision in *Smith v. Smith*, 19 Va. App. 155 (1994), as holding that all property settlement agreements or separation agreements must under all circumstances be revoked in writing. The Court of Appeals in *Smith* held that its prior opinion in *Jennings v. Jennings*, 12 Va. App. 1187 (1991), was to the effect that if there was a clause in a property settlement or separation agreement providing that the agreement was not abrogated by a later reconciliation, then the agreement, in fact, survived a later reconciliation. Although in the *Smith* case there was such an effective "Reconciliation Clause" in the agreement, the Court of Appeals then proceeded in what might arguably be *dicta* to state:

> Any uncertainty on this question has been resolved by the General Assembly. The Premarital Agreement Act provides that such an agreement "may be amended or revoked only by written agreement signed by the parties." Code § 20-153. This provision applies also to agreements entered into by married persons "for the purposes of settling the rights and obligations of either or both of them to the same extent with the same effect and such same conditions ... as ... agreement between prospective spouses." Code § 20-155.
>
> Because the parties had not revoked their agreement in writing, the agreement remained effective, even though the parties unsuccessfully attempted reconciliation. For this reason the decree is reversed and the proceeding is remanded for further proceedings consistent with this opinion. *Id.* at 157.

The Court of Appeals in *Smith v. Smith, supra,* intimated that a fairly well established line of prior cases holding that a reconciliation of the parties after the signing of a separation or property settlement agreement abrogated or canceled all of the executory portions of the agreement was no longer good law. See *Hurt v. Hurt*, 16 Va. App. 792 (1993); *Crenshaw v. Crenshaw*, 12 Va. App. 1129 (1991); *Yeich v. Yeich*, 11 Va. App. 509 (1990). The Court of Appeals indicated that these three cases had marital agreements which were

entered into before July 1, 1986, and thus were not governed by the Premarital Agreement Act which mandates that an agreement can be revoked only by a written document signed by the parties. Because of the unmistakable mandate of the statute that such an agreement "may be ... revoked only by a written agreement signed by the parties" (Code § 20-153), this Court must follow the *Smith* case and hold that the agreement had not been effectively revoked.

### III. *Is Plaintiff Estopped From Relying on the 1988 Agreement?*

The Court has been unable to find any precedent directly on point in this regard, but notes that it is a well established principle in Virginia jurisprudence that marital agreements are, when all is said and done, contracts which must be interpreted and enforced in accordance with the general rules of contract law. The result, which is required by the *Smith* holding, would in some instances be so irrational and unfair as to result in a true miscarriage of justice if the doctrine of equitable estoppel were not available as a defense in extreme circumstances.

The Courts in Virginia have long held that the doctrine of estoppel or equitable estoppel is available in all proceedings including those relating to property settlement agreements and the dissolution of marriages. See, e.g., *Webb v. Webb*, 16 Va. App. 486 (1993); *Emrich v. Emrich*, 9 Va. App. 288 (1989). In fact, the Premarital Agreement Act itself provides in the section immediately preceding the one with which we are dealing that equitable defenses limiting the time for enforcement, including laches and estoppel, are available to either party. Although not directly on point, this statutory provision tends to support the Court's view that § 20-153 of the Code which clearly requires a written and signed revocation of a premarital agreement does not abolish all of the other equitable defenses, such as laches or estoppel that are available to litigants in a court of equity.

Considering the facts of this case, this Court is of the view that Mr. McCall is estopped from relying upon either the 1985 or the 1988 Agreement. First, the undisputed conduct of the parties in obtaining a second Agreement because they had reconciled manifests the clear understanding of both of them that a new agreement was required because of the reconciliation. Therefore, it is not at all surprising that when the parties reconciled in late 1988, that they believed, as they had before, that the separation agreement which had existed during the period of their separation was no longer valid. In addition, there is some evidence, although it is denied by the husband, that the couple actually engaged in the ceremonial act of burning the 1988 Agreement after their reconciliation in December of 1988 as a manifestation of their mutual

understanding that they were resuming their relations as man and wife and that none of the prior agreements would be in effect.

More importantly for the purposes of an equitable estoppel defense, however, is the fact that the wife relied to her clear detriment upon the implied representation of the plaintiff that the agreements were no longer in effect by the nature of his acts. For example, it would simply be irrational to assume that the wife, after reconciling in December of 1988, would obligate herself on a $50,000.00 refinancing loan for the house titled solely in the husband's name which was used as their marital home for the purposes of remodeling and enlarging the home if she did not have some inchoate right to share in the fruits of the obligation. The Court is also mindful of the fact that this period of reconciliation for all intents and purposes was the longest uninterrupted period of cohabitation that this couple had during their entire marriage. The seven years of reconciliation is not a passing moment, or a fleeting attempt "to work things out," but it is so substantial in length as to render inequitable the husband's claim that after this extended period of resumed cohabitation, he can still hold his wife to the literal terms of the 1988 Agreement. Therefore, this Court holds that the husband is estopped from relying upon the 1988 Agreement for any matters relating to division of property, spousal support, and child support.